623 A.2d 1154 (1993)
In re ESTATE OF Tran Van CHUONG, et al.
Madame Ngo Dinh Nhu, Appellant.
Roland D. BROWN, et al., Appellants,
v.
FIRST AMERICAN TITLE INSURANCE COMPANY, Appellee.
Nos. 89-PR-1511, 90-CV-433.
District of Columbia Court of Appeals.
Argued En Banc December 4, 1991.
Decided March 2, 1993.
As Amended on Grant of Rehearing in Part; Rehearing Denied in Part June 3, 1993.
Thomas A. Mauro, Dallas, TX, for appellant in No. 89-1511.
S. Robert Sutton, Washington, D.C., for appellee, Le Chi Tran Oggeri, in No. 89-1511.
Thomas H. Queen, Washington, D.C., guardian ad litem for Tran Van Khiem in No. 89-1511, with whom Douglas M. Jackson was on the brief.
Ronald L. Drake, Washington, D.C., for appellants in No. 90-433.
J. Michael Slocum, with whom James L. Weiner and John C. Decker, II, were on the brief, for appellee in No. 90-433. Merritt *1155 L. Murry, Falls Church, VA, also entered an appearance for appellee in No. 90-433.
Before ROGERS, Chief Judge, FERREN, TERRY, STEADMAN, SCHWELB, FARRELL and KING, Associate Judges, and GALLAGHER, Senior Judge.

ON REHEARING EN BANC
TERRY, Associate Judge:
These two cases, otherwise unrelated, present a common issue of law: whether an order in a civil case disqualifying counsel for a party is immediately appealable as a collateral order. After the cases were separately argued before different divisions of the court, we sua sponte ordered that they be consolidated for rehearing en banc on this single jurisdictional issue. We hold that the disqualification of an attorney is not immediately appealable but, like most trial court orders, must await the entry of final judgment on the merits before being subject to appellate review. In so holding, we overrule statements in prior cases to the contrary.

I. THE FACTS

A. The Chuong Case
This is an appeal by appellant Madame Ngo Dinh Nhu from an order of the probate court disqualifying her attorney, Thomas Mauro, from further representing her in a will contest. Mr. Mauro was disqualified by the trial court because of an alleged conflict of interest arising from his concurrent representation of Madame Nhu and her brother, Tran Van Khiem, in the probate proceeding. Appellant now challenges the disqualification; the court-appointed guardian ad litem for Tran Van Khiem, a mental incompetent, and counsel for a third sibling, Le Chi Tran Oggeri, urge affirmance of the disqualification order.
Tran Van Khiem was arrested on July 24, 1986, and charged with the murder of his parents, the former Ambassador to the United States from Vietnam, Tran Van Chuong, and his wife, Nam Tran Than Tran Van Chuong. Mr. Mauro was appointed to represent Mr. Khiem in the criminal case. Khiem went to trial on the charges, but the court declared a mistrial when Khiem's conduct and the testimony of a doctor from Saint Elizabeths Hospital led to a finding that Khiem was no longer competent to stand trial. Mr. Khiem was later committed to Saint Elizabeths until he regained his competency.[1]
Shortly after the arrest of Mr. Khiem, his sister, Dr. Le Chi Tran Oggeri, filed with the probate court copies of reciprocal wills which expressly disinherited Mr. Khiem and Madame Nhu and made Dr. Oggeri the sole beneficiary. Madame Nhu and Mr. Khiem contested the validity of the wills, the originals of which could not be located. Mr. Mauro represented both Mr. Khiem and Madame Nhu in the probate proceeding; on their behalf he argued that the parents had died intestate.[2]
Dr. Oggeri also filed a civil action seeking to have Mr. Khiem declared criminally liable for the deaths of their parents.[3] The trial court, sensitive to the potential conflict of interest arising from Mr. Mauro's dual representation of Mr. Khiem and Madame Nhu, requested written waivers from both clients. In September 1987 Mr. Mauro ceased to represent Mr. Khiem in the criminal prosecution, but he remained as Mr. Khiem's counsel in the civil suit until August 1989, when he withdrew as Mr. *1156 Khiem's counsel in that case as well. Thereafter Mr. Mauro continued as Mr. Khiem's counsel only in the probate proceeding.
The probate court, at the suggestion of Mr. Mauro, then appointed a guardian ad litem for Mr. Khiem and requested the guardian to submit a report on the potential conflict of interest created by Mr. Mauro's past representation of Mr. Khiem in the civil and criminal cases and his continued representation of both Mr. Khiem and Madame Nhu in the probate proceedings. The guardian concluded that the specific circumstances of the case gave rise to a potential conflict of interest, since Madame Nhu had a pecuniary incentive to establish Mr. Khiem's culpability for his parents' murder. The guardian also suggested that Mr. Mauro might have received confidences in both the criminal and probate matters which would be detrimental to Mr. Khiem's interests and helpful to Madame Nhu in future probate proceedings. Finally, the guardian ad litem asserted that Mr. Khiem, because of his deteriorated mental condition, could not validly waive the conflict of interest.
Mr. Mauro disagreed with the conclusions of the guardian ad litem. After a hearing, however, the probate court ordered Mr. Mauro to withdraw as Madame Nhu's counsel by a specified date, "absent the filing of an informed consent by the Guardian Ad Litem ... to [Mauro's] continued legal representation of Madame Ngo Dinh Nhu...." The guardian ad litem later reported that he was unable to file such an informed consent, and Madame Nhu noted this appeal.[4]

B. The Brown Case
This litigation arises from a dispute between appellants, homeowners Roland and Miriam Brown, and appellee First American Title Insurance Company. In the course of buying a home in Southeast Washington, the Browns obtained a title insurance policy from First American. After settlement, however, the Browns learned that they had not received a clear title to their home. First American retained its own counsel in order to fulfill its obligation, under the insurance policy, to clear the defects from the Browns' title. Soon thereafter First American's counsel notified the Browns not only that he represented First American's interests, but that First American's actions in pursuit of a clear title would necessarily be in the Browns' best interests as well.
Despite this assurance, the Browns soon concluded that First American was not doing all that it should be doing, so they retained an attorney of their own to ensure that their title would in fact be cleared. Both First American's and the Browns' counsel proceeded independently to perform essentially the same tasks in their efforts to remove the encumbrances from the title. This simultaneous activity led to some interaction between First American's and the Browns' counsel, mostly in the form of correspondence indicating how each felt the other was performing. Both attorneys were present at some of the same judicial proceedings regarding the claims against the Browns' title, and both were in contact with the encumbrance holders.
The Browns eventually brought this action against First American for allegedly failing to perform diligently its contractually duties under the title insurance policy. First American moved before trial to dismiss the Browns' attorney, Ronald Drake, alleging that he had become so involved in the efforts to clear the title that his appearance as a witness would be necessary to refute the Browns' claims of negligence. The motion asserted that the Browns' own complaint supported this conclusion, for it implied that their attorney had contributed to the procedural delays by acting simultaneously with First American's counsel in pursuit of the same goals.
The trial court concluded that both the Browns' complaint and First American's *1157 motion demonstrated that Mr. Drake would be a witness in the trial. Accordingly, the court, in a brief order, granted the motion and disqualified Mr. Drake from "taking any part in the maintenance and trial of [the case]" and, in addition, from assisting subsequent counsel in any capacity as an attorney. The Browns noted the instant appeal from that order.

II. JURISDICTION
Under D.C.Code § 11-721(a)(1) (1989), this court has jurisdiction to review all final orders and judgments of the Superior Court. An order is final only if it "disposes of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." McBryde v. Metropolitan Life Insurance Co., 221 A.2d 718, 720 (D.C. 1966). To be reviewable, "a judgment or decree must not only be final but also complete, that is, final not only as to all parties, but as to the whole subject matter and all the causes of action involved." District of Columbia v. Davis, 386 A.2d 1195, 1198 (D.C.1978).
The orders disqualifying Mr. Mauro and Mr. Drake from participating further in these cases are obviously not "final orders," since both cases remain alive on the trial court docket and are a long way from being tried. The parties all agree that if the orders are appealable at all, the appeals must be brought within "a narrow but well-recognized exception to the rule against appeals from non-final orders" known as the collateral order doctrine. Stein v. United States, 532 A.2d 641, 643 (D.C. 1987), cert. denied, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988). That doctrine is a creature of the Supreme Court which this court, like many others, has chosen to adopt. It was first articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), when the Court identified a "small class" of orders
which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.
Id. at 546, 69 S.Ct. at 1225-26. As refined in later cases, the collateral order doctrine came to have three requirements, all of which must be met before an interlocutory order may be appealed. To be appealable under Cohen,
a trial court order must, at a minimum, meet three conditions. First, it "must conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; third, it must "be effectively unreviewable on appeal from a final judgment."
Flanagan v. United States, 465 U.S. 259, 265, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984), quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978).
The question we must decide is whether an order disqualifying counsel in a civil case is immediately appealable under the Cohen collateral order doctrine. In answering this question, we are faced with a conflict between our own earlier statements and a more recent Supreme Court opinion on the subject. This court said in Urciolo v. Urciolo, 449 A.2d 287 (D.C. 1982), that an order disqualifying counsel from participating in an ongoing case "is appealable as a collateral order." Id. at 290 (footnote omitted). In Urciolo we echoed our earlier holding in American Archives' Counsel v. Bittenbender, 345 A.2d 487, 490 (D.C.1975). In both Urciolo and Bittenbender we applied the three-part Cohen test and concluded that orders disqualifying counsel in civil cases are "`effectively unreviewable' on appeal from a final judgment." Urciolo, supra, 449 A.2d at 290; Bittenbender, supra, 345 A.2d at 490; see also Borden v. Borden, 277 A.2d 89, 90 (D.C.1971) (trial court order appointing counsel held to be appealable as a collateral order).
The Supreme Court has discussed the appealability of orders disqualifying counsel in several cases, most recently in a decision which we find more persuasive *1158 than our own earlier opinions to the contrary. In the first of these cases, Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 377-378, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981), the Court held that the denial of a motion to disqualify an attorney in a civil case was not appealable as a collateral order because it was not "effectively unreviewable on appeal from a final judgment," the third of the three requirements for immediate appealability outlined in Coopers & Lybrand, supra.[5] Three years later, in Flanagan v. United States, supra, the Court decided a question left open in Firestone and held that an order disqualifying counsel in a criminal case did not meet either the second or the third requirement; i.e., it did not "resolve an issue completely separate from the merits of the action," 465 U.S. at 269, nor was it "effectively unreviewable on appeal from a final judgment," id. at 268, 104 S.Ct. at 1056 (citations and internal quotation marks omitted).[6]
Finally, in Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 440, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985), decided the following year, the Court extended Flanagan to encompass civil as well as criminal cases and held that an order disqualifying counsel in a civil case failed to satisfy the second and third elements of the Coopers & Lybrand test. As to the second, the Court held that orders disqualifying counsel because counsel will probably have to testify at trial (the situation in the Brown case) are "inextricable from the merits because they involve an assessment of the likely course of the trial and the effect of the attorney's testimony on the judgment." Richardson-Merrell, supra, 472 U.S. at 439, 105 S.Ct. at 2765 (citation omitted). Orders grounded on attorney misconduct would likewise be "entwined with the merits," as the Richardson-Merrell case itself showed: the Court of Appeals, in reversing the disqualification order, "exhaustively discuss[ed]" the merits of the plaintiff's claim. Id. at 439-440, 105 S.Ct. at 2765. As to the third requirement, the Court held that because prejudice is not "a prerequisite to reversal of a judgment following erroneous disqualification of counsel ... the propriety of the trial court's disqualification order can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal." Id. at 438, 105 S.Ct. at 2765.
The reasoning of the Supreme Court in Richardson-Merrell is more thorough, and ultimately more persuasive, than our own more limited analysis in Urciolo and Bittenbender. Because the collateral order doctrine was created and has been developed exclusively by the Supreme Court, we would normally look to that Court's decisions in determining whether the doctrine applies in a given case. We certainly endorse the policy goal articulated in the Richardson-Merrell decisionthe prevention of "`piecemeal appellate review of trial court decisions which do not terminate the litigation.'" 472 U.S. at 430, 105 S.Ct. at 2761 (citation omitted). The cases we cited in a footnote in Urciolo as "agree[ing] that orders granting disqualification motions are appealable collateral orders"[7] have been nullified as precedents by Richardson-Merrell. That decision tells us, in the clearest possible terms, that orders disqualifying counsel in civil cases are not appealable in the federal courts as collateral orders under Cohen. We hold today that they are not appealable in the District of Columbia courts either. To the extent that Urciolo and Bittenbender are inconsistent with Richardson-Merrell, they are now expressly overruled.

*1159 III. PREJUDICE
Four members of the court[8]a majority of the majority, but a plurality of the eight-judge en banc courtjoin in this portion of the opinion.
To our jurisdictional holding we would add a corollary. As a quid pro quo for barring interlocutory appeals from orders disqualifying counsel, we would also hold that a party challenging such an order in an appeal from a final judgment need not demonstrate prejudice; rather, once the order is shown to have been erroneous, the party opposing reversal should bear the burden of demonstrating to the appellate court a lack of prejudice. Such a holding would follow the lead of the Maryland Court of Appeals in Harris v. David S. Harris, P.A., 310 Md. 310, 529 A.2d 356 (1987), with the apparent encouragement of at least one member of the Supreme Court.[9]
In Richardson-Merrell the Court explicitly avoided the issue of whether a showing of prejudice was required to reverse a trial court disqualification of counsel: "This Court has never held that prejudice is a prerequisite to reversal of a judgment following erroneous disqualification of counsel in either criminal or civil cases. As in Flanagan, we need not today decide this question." Richardson-Merrell, supra, 472 U.S. at 438, 105 S.Ct. at 2765. Appellants argue, as the Court of Appeals asserted in Richardson-Merrell, that "it would appear virtually impossible to show prejudice resulting from the absence of one counsel and the substitution of another." Koller v. Richardson-Merrell, Inc., 237 U.S.App.D.C. 333, 347, 737 F.2d 1038, 1052 (1984).[10] The Supreme Court did not disagree, but merely noted that this difficulty went "more to the issue of the showing required to reverse a final judgment than to whether a disqualification order should be subject to immediate appeal." Richardson-Merrell, Inc. v. Koller, supra, 472 U.S. at 438, 105 S.Ct. at 2765.
We readily agree that, although attorneys are not fungible, see Harris v. Akindulureni, 342 A.2d 684 (D.C.1975), it will be difficult for a litigant to persuade an appellate court that the strategy or tactics of one attorney were any less effective than those that another attorney would have chosen if given an opportunity to do so. Thus recognizing the practical problem inherent in requiring an appellant to demonstrate prejudice resulting from an erroneous disqualification of counsel, we think nevertheless that the problem has a relatively simple solution. In discussing what showing of prejudice, if any, is required to reverse a trial court's order of disqualification, the Maryland Court of Appeals shifted to the party who originally moved for disqualification the burden to disprove prejudice. In Harris v. David S. Harris, P.A., supra, the court held that in such cases "an erroneously imposed disqualification deprives a litigant of the right to chosen counsel." 310 Md. at 319, 529 A.2d at 360. It then laid down a rule to govern future cases:
If it is established on appeal that the disqualification was in error ... the burden will be on the party advantaged by the erroneous disqualification to prove that the disqualification did not influence the outcome of the litigation.
*1160 Id. at 319-320, 529 A.2d at 360-361. Relieving the complaining party of the burden of establishing prejudice, the court said, "renders a disqualification order subject to effective post-judgment review." Id.
We agree with the approach taken by the Maryland court. Shifting the burden to the party advantaged by an erroneous disqualification of counsel would eliminate the practical problem of how to "show prejudice resulting from the absence of one counsel and the substitution of another." Richardson-Merrell, supra, 472 U.S. at 437, 105 S.Ct. at 2764. Indeed, given the importance of the right to select one's own counsel, we think there is implicit in an erroneous disqualification a probability of substantial prejudice, which the party who benefits from such a ruling could properly be expected to negate. Such burden-shifting would also discourage the tactical filing of frivolous motions to disqualify counsel, an evil of which the Supreme Court was well aware.[11] A party faced with the likelihood that a favorable judgment will be reversed after a finding of erroneous disqualification and an inability to disprove prejudice will think twice before filing a groundless motion to disqualify.

IV. CONCLUSION
Finding Richardson-Merrell more persuasive than our own precedents to the contrary, we adopt the reasoning of Richardson-Merrell and hold that an order disqualifying counsel in a civil case is not immediately appealable under the collateral order doctrine. To the extent that our prior decisions in Urciolo v. Urciolo and American Archives' Counsel v. Bittenbender are inconsistent with what we have said in part II of this opinion, they are hereby overruled. A plurality of the court (four judges out of the seven-judge majority) would go further and hold that when such a disqualification order is challenged in any appeal from a final judgment, the appellant should have the usual burden of demonstrating that the order was erroneous. Once that is done, however, the burden should shift to the opposing party to demonstrate that no prejudice to the appellant resulted from the erroneous order.
For the foregoing reasons, these appeals are
Dismissed for lack of jurisdiction.[12]
SCHWELB, Associate Judge, with whom Associate Judges STEADMAN and KING join, concurring in part and dissenting in part, and concurring in the judgments:
I agree with the majority that we should follow the holding in Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 440, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985), that an order disqualifying counsel is not a proper subject for an interlocutory appeal. I am unable, however, to join Part III of Judge Terry's opinion, which undertakes to allocate the burden of proof in a hypothetical proceeding which may never come to pass.
As a result of our adoption of the Richardson-Merrell approach, the appellants in these cases will be required to proceed in the trial court without the assistance of disqualified counsel. This does not necessarily mean, however, that the appellants will lose on the merits, or that there will *1161 ever be a new appeal in either matter. Appellants may be successful at trial. Alternatively, the cases may be settled. The plurality is therefore answering a question which, at least in these cases, may never be posed to us. There is plenty of time to announce a rule about burden of proof if and when the issue is presented on a concrete record, rather than on a hypothetical record of which we cannot know the contents without a crystal ball.
Courts, even en banc courts, are not supposed to decide issues which will only affect the rights of the parties in the uncertain event that some contingency arises. We recently reiterated that "an issue is ripe for adjudication only when the parties' rights may be immediately affected by it." Allen v. United States, 603 A.2d 1219, 1228-29 n. 20 (D.C.1992) (en banc) (emphasis added). As Judge (later Chief Justice) Burger stated for the court in Oliver v. United States, 118 U.S.App.D.C. 302, 304 n. 2, 335 F.2d 724, 726 n. 2 (1964), cert. denied, 379 U.S. 980, 85 S.Ct. 686, 13 L.Ed.2d 571 (1965), "[i]t is inappropriate for us to undertake an advisory opinion on issues which may or may not arise." "[W]here the ultimate question depends on contingencies which may not come about, that question is not ripe for judicial resolution." Smith v. Smith, 310 A.2d 229, 231 (D.C.1973). It is "beyond [the] power" of a court to render an opinion under these circumstances. Id.
There are sound reasons for the exercise of judicial restraint, no matter how tempting it may be to settle an issue "fairly" once and for all. The Supreme Court has consistently refused to give "advance expressions of legal judgment" upon issues which are raised in the abstract and "remain unfocused," for such issues lack "that clear concreteness provided when a question emerges precisely framed and necessary for a decision from a clash of adversary argument exploring every aspect of a multi-faceted situation embracing conflicting and demanding interests...." United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961).[1]
I agree that since appellants will henceforth have no opportunity to take an interlocutory appeal from an order disqualifying counsel, we should assure that they will be accorded a meaningful opportunity to raise the issue of the propriety of the disqualification if and when an appeal is filed from a final order. In my view, however, the proper time for ensuring such protection for appellants will come when such an appeal is before us. We will then know all there is to know about the controversy, and will thus be able to adapt any proposed rule of law to the facts then at hand. As the Supreme Court cautioned in The Florida Star v. B.J.F., 491 U.S. 524, 533, 109 S.Ct. 2603, 2609, 105 L.Ed.2d 443 (1989), "the future may bring scenarios which prudence counsels our not resolving anticipatorily." We should not cast aside familiar considerations of judicial restraint on the basis of some notion that, unless we take preemptive action now, some division of the court which may or may not have to deal with the question in some hypothetical appeal from a final order will not do the right thing.[2] With respect to questions not yet properly before us, "la silence est d'or."[3]
*1162 GALLAGHER, Senior Judge, dissenting:
It should be noted initially that this court points to no local experience with motions to disqualify counsel which might lead us to abandon our prior decisions relating to interlocutory appeal on the grant by the trial court of such motions. On a purely local appellate policy, i.e., the right to an interlocutory appeal, one might anticipate that an appellate court would change a long established policy only if its own experience has proved it unwise and another policy is better. Our interlocutory appeal policy was bottomed on this being the only means of affording an effective review. Urciolo v. Urciolo, 449 A.2d 287 (D.C. 1982); American Archives' Counsel v. Bittenbender, 345 A.2d 487 (D.C.1975). The actuality is that over the years this court only very rarely received an appeal from a grant of a motion to disqualify counsel. Ordinarily, such motions are filed pretrial and are by their nature not complex and are factually oriented. They are susceptible of being decided promptly by a regular motions panel of the court, and often may not even require a written opinion and could be decided by a brief memorandum and order of the court, as a practical matter. Also, since the order of the trial court is usually entered before trial, it need not delay the trial in that court, which is then in the pretrial stage of the proceedings. So the practical side is really quite minor. But, on the other hand, affording an effective review is an important principle.
The federal Circuit Courts of Appeal across the country had previously concluded that on appeal after final judgment, where one must show prejudicial error to be successful, litigants deprived of chosen counsel are not able to establish error because "it might well require a party to show that he lost the case because he was improperly forced to change counsel" and "[t]his would appear to be an almost insurmountable burden." Armstrong v. McAlpin, 625 F.2d 433, 440-41 (2d Cir.1980) (en banc), vacated on other grounds, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); see also Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 719 (7th Cir. 1982) ("[i]f the order granting disqualification is erroneous, correcting it with an appeal at the end of the case might well [be]... `an almost insurmountable burden'") (citation omitted); In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 658 F.2d 1355, 1358 (9th Cir.1981) ("[i]t would place an almost insurmountable burden on a person who is not a party to the litigation to vindicate a right to counsel of his choice ... if he were required to show on appeal from the final judgment that he had lost the case because he had been improperly forced to change counsel"), cert. denied, 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982); Duncan v. Merrill Lynch, Pierce, Fenner & Smith, 646 F.2d 1020, 1027 (5th Cir.) (stating that correcting the grant of a disqualification order on appeal is "`an almost insurmountable burden'") (citation omitted), cert. denied, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).
Faced with this nationwide appellate reality, the opinion in Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), simply summarily dispenses with the usual requirement on the appellant to establish prejudice, saying that the Supreme Court "has never held that prejudice is a prerequisite to reversal following erroneous disqualification of counsel either in criminal or civil cases."[1] *1163 In this jurisdiction, however, there is a well-recognized statutory mandate regarding prejudicial error. D.C.Code § 11-721(e) (1989) (sometimes referred to as encompassing the "harmless error" doctrine).
This is not to say that there has not always been a well known appellate revulsion against piecemeal appeals, for obvious reasons. But when it comes to the basic problemunreviewability if the normal prejudicial error test must be metthe plurality opinion abandons the Supreme Court opinion in Richardson-Merrell, supra, which I had understood it is relying upon, and instead elects "to follow the lead of the Maryland Court of Appeals" in Harris v. David S. Harris, P.A., 310 Md. 310, 529 A.2d 356 (1987). It so happens that the Maryland court also departs from the basic reasoning of Richardson-Merrell because, said the court:
In contradistinction to the [Supreme Court] in Richardson-Merrell, we start with the premise that the appellate courts of this State will not reverse a lower court judgment for harmless error: the complaining party must show prejudice as well as error. [Emphasis in text.]
Although this court's opinion tells us how impressive is the reasoning of the Supreme Court in Richardson-Merrell, when it comes to the crunch of effective reviewability, the plurality departs from the Supreme Court to join the Maryland court instead, enigmatically.
The Maryland court goes on to state that because losing chosen counsel is such a fundamental deprivation, "we shall presume that the disqualified attorney's former client has been prejudiced and the burden will be on the party advantaged by the erroneous disqualification to prove that the disqualification did not influence the outcome of the litigation." Harris, supra, 310 Md. at 320, 529 A.2d at 361 (emphasis added). But relieving the appellant of the burden of establishing prejudice, said the court, this "renders a disqualification order subject to effective post-judgment review." Id.
Having ruled that our court is bound by Richardson-Merrell, supra, and having then expressly overruled our prior decisions in Urciolo v. Urciolo and American Archives' Counsel v. Bittenbender, supra, a plurality of the court here turns to the prejudice dilemma. It says that, as to this, the court "would add a corollary." The court states:
As a quid pro quo for barring interlocutory appeals from orders disqualifying counsel, we would also hold that a party challenging such an order in an appeal from a final judgment need not demonstrate prejudice; rather, once the order is shown to have been erroneous, the party opposing reversal should bear the burden of demonstrating to the appellate court a lack of prejudice. Such a holding would follow the lead of the Maryland Court of Appeals....
Ante at 1159.
Though it does not say so, it is there departing in an important sense from the Supreme Court in Richardson-Merrell. There, the Supreme Court stated that the prejudice requirement simply does not exist in these cases.
The plurality does not state, as the Maryland court did, that it is "presuming" prejudice if the disqualifying order is erroneous, but rather is adopting this new rule of appellate procedure "with the apparent encouragement of at least one member of the Supreme Court." The opinion goes on to explain that then-Justice Brennan had attached an understanding to his concurrence in Richardson-Merrell. There, Justice Brennan took the extraordinary step of conditioning his concurrence with the Court's opinion:

*1164 On the understanding that the courts of appeal will develop standards for reviewing final judgments that will effectively protect each litigant's right to retain the attorney of choice, I join the Court's opinion.
472 U.S. at 442, 105 S.Ct. at 2767.
I read the Supreme Court's opinion as stating that once it had removed the prejudice requirement, there was then no obstacle to an effective review of a final judgment. Apparently, Justice Brennan did not think so else he would not have conditioned his concurrence in that extraordinary manner.
Returning to the "quid pro quo," the opinion leaves a question unanswered: how is the prevailing party at trial (the appellee) to be reasonably expected to show a lack of prejudice when, for example, the various federal courts of appeal across the country have concluded that even an appellant in these counsel disqualification cases is in no position to show prejudice. If a deprived appellant is, as a matter of litigation reality, in no position to show prejudice, then it is difficult to understand how the opposing party (the appellee) reasonably could be expected to shoulder the burden of showing a lack of prejudice, not in theory but as a realistic matter in civil litigation. Put simply, if it is acknowledged that, on this issue, an appellant cannot reasonably be expected to show prejudice, how then can the appellee reasonably be expected to demonstrate lack of prejudice? This test is just an abstraction. The appellee is naturally much further removed from the necessary information and in no position to assume the burden. Consequently, I believe there is being created, as a practical matter, a reversible error per se rule. In the real world, an appellee will not have the capability of establishing lack of prejudice. And, as we know very well, error per se is increasingly frowned upon. See, e.g., Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
So, one returns to the proposition that we are here considering a local appellate policy question over which we, not any other court, have autonomy; and this court has had no adverse experience with our existing interlocutory appeal rule on counsel disqualification, in the rare cases that come along to invoke it. This being so, there is not a need to change it by overruling our prior decisions. I kind of wonder whether we are "tilting at windmills."
The practical effect will be to put an unbearable price on filing a motion to disqualify no matter how meritorious and therefore in the public interest. The potential price to a movant is too high. Since the heart of the problem is affording a party an effective review on such a basic issue as losing one's chosen counsel, I favor insuring that litigants get it, i.e., by grant of an interlocutory appeal. The cost is simply to retain our longstanding rule on interlocutory appeal of this particular issue. These rare motions have not been abused in this court system, and the court's opinion does not claim otherwise; and so I do not understand the plurality's reference to "the tactical filing of frivolous motions to disqualify counsel," because the plurality is unable to point to any such unethical practices in this jurisdiction. And I would not for a moment imply that the motions in the cases under review are in this category.
In the administration of justice, the fundamental consideration for a court on an appeal is that a party have the opportunity for an effective appeal. That is to say, a trial court ruling under attack should not be effectively unreviewable. It was this consideration which led federal courts of appeal across the country to decide that where after final judgment one must show prejudicial error, this was an "almost insurmountable burden" in the matter of counsel disqualification.
Because of that consideration, the undesirability of piecemeal appeals should in this instance give way to the more important need to afford a party effective reviewability by an interlocutory appeal. The scales of justice should tip in that direction, especially where, as here, the disqualification issue arises so rarely and, when it does, the administrative inconvenience for the court could be so slight. Instead, the plurality would now establish *1165 what is, in effect, an undesirable reversible error per se doctrine in relation to a counsel disqualification issue, for no worthwhile reason.
NOTES
[1] At a later stage of the case, the trial court, on the government's motion and after a series of hearings, entered an order authorizing the hospital to administer psychotropic medication to Mr. Khiem against his will in an effort to restore him to competency. That order was recently affirmed by this court. Khiem v. United States, 612 A.2d 160 (D.C.1992).
[2] Under the probate law of the District of Columbia, all surviving children share equally in the estate of a parent who dies intestate. D.C.Code § 19-306 (1989).
[3] Should the court declare the wills invalid and find Mr. Khiem criminally liable for the deaths of the parents, Dr. Oggeri and Madame Nhu would each take half of the estate, but Mr. Khiem would inherit nothing. D.C.Code § 19-320(a) (1989); see Napoleon v. Heard, 455 A.2d 901 (D.C.1983).
[4] In the course of these proceedings, Mr. Mauro has characterized himself as an appellant, along with Madame Nhu. However, only Madame Nhu is identified on the notice of appeal as the appellant.
[5] The Court agreed that the challenged order met the first requirement of conclusively determining the disputed question, 449 U.S. at 375, 101 S.Ct. at 674, and assumed without deciding that it met the second, i.e., that it resolved an important issue completely separate from the merits of the action. Id. at 376.
[6] Having so held, the Court apparently saw no need to discuss the first requirement that the order conclusively determine the disputed question, although at one point the Court did refer to the disqualification order as "final," albeit "not independent of the issues to be tried." Flanagan, supra, 465 U.S. at 268, 104 S.Ct. at 1056.
[7] Urciolo v. Urciolo, supra, 449 A.2d at 290 n. 4.
[8] Chief Judge Rogers and Associate Judges Ferren, Terry, and Farrell.
[9] Justice Brennan, in his concurring opinion in Richardson-Merrell, stated his "understanding that the courts of appeals will develop standards for reviewing final judgments that will effectively protect each litigant's right to retain the attorney of choice...." 472 U.S. at 442, 105 S.Ct. at 2767. The Maryland Court of Appeals in Harris has done just that. The Supreme Court of Connecticut, in Burger & Burger, Inc. v. Murren, 202 Conn. 660, 668-669, 522 A.2d 812, 816 (1987), citing inter alia Justice Brennan's concurring opinion, hinted that it might adopt a rule similar to the Maryland rule, but it did not do so in Burter & Burger and, to our knowledge, has not yet done so.
[10] Accord, Burger & Burger, Inc. v. Murren, supra note 9, 202 Conn. at 668, 522 A.2d at 816 ("Demonstrating that the outcome of a trial has been affected by an erroneous disqualification of counsel rather than by the other `myriad variables present in civil litigation' concededly would impose a difficult burden on a losing litigant").
[11] In Richardson-Merrell the Court noted that it "share[d] the Court of Appeals' concern about tactical use of disqualification motions to harass opposing counsel." 472 U.S. at 436, 105 S.Ct. at 2763 (internal quotation marks omitted).
[12] We are not saying, of course, that these appeals are (or are not) meritless. Whether to disqualify counsel in a civil case is a decision resting within the sound discretion of the trial court. Derrickson v. Derrickson, 541 A.2d 149, 152 (D.C.1988); O'Neal v. Bergan, 452 A.2d 337, 344 (D.C.1982). Like any exercise of discretion, however, a court's ruling either way must rest on "valid reason[s]" and "a specific factual predicate." Johnson v. United States, 398 A.2d 354, 364 (D.C.1979). In its present state, the record in the Brown case, in particular, provides limited support for the ruling at issue here. The docket does not reflect that the court held a hearing on the motion to disqualify counsel, and the court's one-page order does not reveal the reasoning behind it. It would certainly be helpful to this court in any future appeal if, at some point, the trial court in Brown were to provide a fuller statement of its reasons for granting the motion than the record now contains. See, e.g., Stansel v. American Security Bank, 547 A.2d 990, 996 (D.C.1988), cert. denied, 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989).
[1] Although the commentator's characterization is much too harsh to be fairly applied to the present case, I note that the "judicial activism" inherent in deciding issues which are not fairly presented has been satirized as "Have Opinion, Need Case." BERNARD E. WITKINS, MANUAL ON APPELLATE COURT OPINIONS § 85, at 155 (1977) (quoted in Gantt v. Sentry Insurance, 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 887, 824 P.2d 680, 693 (1992) (Kennard, J., concurring in the result). If there is a need for a decision on the allocation of the burden of proof, that question will surely come before us directly without our trying to settle it in advance for all time.
[2] I note that in Harris v. David S. Harris, P.A., 310 Md. 310, 529 A.2d 356, 360-61 (1987), the court adopted a presumption that disqualification of chosen counsel results in prejudice. The court did not, however, address the question whether this part of its opinion was advisory in nature. This omission substantially detracts from the persuasive force of Harris as a precedent. Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925); Thompson v. United States, 546 A.2d 414, 423 n. 14 (D.C. 1988); cf. Burger & Burger, Inc. v. Murren, 202 Conn. 660, 522 A.2d 812, 816 (1987), in which the court raised, but did not conclusively decide, the issue as to the proper allocation of the burden of proof.
[3] Silence is golden.
[1] The Court at that point made an intriguing reinforcing observation. Said the Court:

The Court of Appeals relies on a requirement of prejudice to overcome the third Coopers & Lybrand requirement that the ruling "be effectively unreviewable on appeal from a final judgment." ... Yet by reversing the decision of the District Court on the interlocutory appeal, the Court of Appeals implicitly held that a showing of prejudice is not required on interlocutory appeal.... [I]f establishing a violation of one's right to counsel of choice in civil cases requires no showing of prejudice,... the propriety of the trial court's disqualification order can be reviewed as effectively an appeal of a final judgment as on an interlocutory appeal.
472 U.S. at 438, 105 S.Ct. at 2765 (emphasis added).
What makes that discussion puzzling is that on review of a trial court order granting disqualification of counsel on an interlocutory appeal (ordinarily a pre-trial order), the review standard is abuse of discretion, and there is then of course no trial record yet against which to measure prejudice. On review after final judgment there is of course a trial record, and in this jurisdiction, as in others, the test of prejudicial error is statutorily required to be applied. D.C.Code § 11-721(e). Therefore, the implication attributed to the holding of the Court of Appeals is not readily understood.