507 A.2d 186

**James Wilmer COPSEY**

v.

**STATE of Maryland.**

**No. 937, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 8, 1986.

224

Theodore P. Weiner (Paul J. Bailey, on brief), Leonardtown, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Richard Cooper, State's Atty. for Charles County and Leonard Collins, Asst. State's Atty. for Charles County on brief, LaPlata), for appellee.

Argued before MOYLAN, WEANT and KARWACKI, JJ.

MOYLAN, Judge.

The mushrooming case law on double jeopardy over the last several decades has treated almost exclusively the subtleties and nuances emerging on the far periphery of that complex subject—collateral estoppel, multiple-jurisdiction prosecutions, prosecutorial overreaching, etc. The present appeal, by way of contrast, touches the core value of that law. Whereas frequently we are confronting strained attenuations of the invigorating principle, we are looking here at the very paradigm of the double jeopardy protection.

■ "Double jeopardy" was a convenient umbrella term adopted by Sir William Blackstone to cover, along with several other closely related pleas no longer pertinent, the two common law pleas in bar of *autrefois acquit* (former acquittal) and *autrefois convict* (former conviction). These were not and are not general issue pleas for purposes of defending upon the merits. They were and are pleas in bar, intended to be interposed in advance of a contemplated subsequent trial for the purpose of foreclosing that trial. Collectively, they are sometimes referred to as *"res judicata* in prison gray."

■ The purpose served by the plea of former acquittal is that of preventing a defendant who has once survived his initial jeopardy from being "twice vexed" by a fresh expo-

sure to the hazard of conviction for that same offense. The purpose served by the plea of former conviction is that of preventing a defendant who has once been convicted of an offense from being exposed to the hazard of being twice punished for that same offense.

The appellant, James Wilmer Copsey, claims that he was unconstitutionally subjected to the risk of multiple punishment for the same offense in contravention of his Fifth Amendment right against double jeopardy, made applicable to the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). We agree that he was.

The appellant was initially charged and convicted in St. Mary's County for a continuing sexual offense (the conviction, upon a plea of guilty, was literally for a sexual offense in the second degree) against a minor. He was subsequently charged in Charles County for what was, in effect (despite the proliferation of counts), a continuing sexual offense against the same minor male over a shorter but included period of time. The appellant interposed a plea of double jeopardy as a bar to trial in Charles County. That plea was denied, and this appeal has timely followed.

The prosecution of this case, commenced in St. Mary's County, was presented with two initially troubling but readily surmountable obstacles—one temporal and the other, geographic. The manner in which those obstacles were overcome affected directly the contours of the jeopardy to which the appellant was first exposed.

The appellant, a 59-year-old man at the time the St. Mary's County charges were filed, was suspected of and was arrested for having committed fellatio and anal intercourse on almost a daily basis over a five-year period with the young boy, who was approximately 10 years of age when the pattern of criminal behavior began and was 14 years of age when charges were ultimately brought.

Armed with strong proof of criminal behavior generally but with little realistic way of pinpointing precise dates, the

State prudently charged the appellant with a single continuing offense from January 1, 1979, through November 1, 1984. That charging option obviously facilitated the State's burden of proof. Proof of a sexual offense upon the victim at any time within the almost six-year period would suffice to sustain the charge. As a result, of course, the appellant was thereby placed in jeopardy for any sexual offense he perpetrated upon the victim at any time during that all-embracing period.

As a practical matter, the State had much to gain through the easing of its problem of proof and very little to lose by way of diminishing the potential for punishment. The maximum sentence available for even a single such conviction was enough to satisfy the State's desire for punishment, particularly in view of the fact that the appellant would be 59 years of age at the time of sentencing. If a conviction had been returned on the first count charging a sexual offense in the first degree, the maximum punishment could have been life imprisonment. Even upon the second count, on which the guilty plea was ultimately entered, the maximum penalty was twenty years in prison. As a purely theoretical matter, of course, the State paid a calculated price for this tactical advantage. Had diaries, journals, or other records been available, from either the appellant or the victim, to pinpoint precise sexual episodes on precise days, the appellant might theoretically have faced 2,132 criminal charges, one for each and every day. In exchange for a tactical trial advantage, the State forfeited the possibility of a sentence of 2,132 consecutive life terms. Even upon the second counts, the State exchanged the potential for a term of 42,640 years for a potential term of twenty years.

■ In doctrinal terms, what could have been 2,132 distinct and non-overlapping jeopardies were consolidated into a single jeopardy. If separately charged, a criminal episode on January 1, 1979, and another criminal episode on November 1, 1984, quite obviously might involve separate and

distinct jeopardies so as not to raise the spectre of double jeopardy when the trial of one followed or paralleled the trial of the other. If, however, the charge encompasses both dates within the outer limits of a single continuing offense, jeopardy for either is jeopardy for both. The breadth of jeopardy may sometimes be a function of the charging document rather than a function of the criminal act itself.

On the time line, then, the charge as to which the appellant stood in jeopardy in St. Mary's County on July 9, 1985 (when his case was called for trial and jeopardy attached), operated to place him in jeopardy for all sexual offenses against the named victim between January 1, 1979, and November 1, 1984. That was the direct result of the manner by which the State chose to handle the problem of charging and proving the date of the offense.

We turn from the State's handling of its temporal problem to its handling of the geographic problem. Over the course of the five-to-six-year period with which we are concerned, the appellant and his victim were in virtually daily contact at Mickey's Shell Station in St. Mary's County. The location of Mickey's Shell Station is extremely close to the Charles County line. Little, if any, of the criminal sexual behavior actually took place at Mickey's Shell Station. The regular pattern of conduct was for the appellant and his victim to leave Mickey's Shell Station and go directly to the two-room house owned by the appellant on Oak Road in Charlotte Hall. The vast majority of the sexual offenses occurred in that two-room house, which happened to be just across the Charles County line. The evidence also revealed that on one occasion a sexual offense was committed in a residence on Cobb Island, also just across the Charles County line. On several occasions during one of the summers, there were sexual offenses which took place on the appellant's boat in the area of Benedict, also just across the Charles County line. The ongoing pattern, therefore, was to leave St. Mary's County for purposes of

sexual contact, to engage in the sexual behavior in Charles County, and then to return to St. Mary's County.

Two provisions of the Annotated Code of Maryland, Article 27, make it easier for the State to charge and to prove a crime when there is some ambiguity or imprecision as to the county in which the crime occurred. In easing the venue problem for criminal offenses generally, when they are committed on or near boundary lines of counties, § 590 provides:

> "Any person who may commit any crimes, felony or misdemeanor, on or at the boundary or divisional line between any of the counties in this State, or so near thereto or where the exact location of such boundary is so uncertain as to render it doubtful in which county the offense was committed, then the county which first assumes jurisdiction by issuing process for the arrest and prosecution of the offender shall have jurisdiction to charge, present, indict, try, convict and sentence; and in such case it shall be only necessary for the State to establish the venue alleged in the information, warrant or indictment, by proving that the offense was at or on the boundary of the county wherein the accused is being tried, or was so near thereto or the location of the boundary is so uncertain as to render it doubtful in which county the crime was committed."

Quite aside from the question of geographic uncertainty, § 465, as part of the Sexual Offenses subtitle, further provides:

> "If a person is transported by any means, with the intent to violate this subheading and the intent is followed by actual violation of this subheading, the defendant may be tried in the appropriate court within whose jurisdiction the county lies where the transportation was offered, solicited, begun, continued or ended."

In this case, the appellant could properly have been charged, tried, and convicted in either St. Mary's County or Charles County. St. Mary's County, however, moved first.

The criminal information was filed in St. Mary's County on December 18, 1984. The Charles County indictment was handed down on February 19, 1985. More significantly, jeopardy attached to the appellant in St. Mary's County on July 9, 1985. It never has attached in Charles County, and the purpose of the plea in bar now being reviewed is to see that it never does attach.

The resolution of that issue requires a determination of whether the appellant was in jeopardy in St. Mary's County for the criminal conduct which is the subject of the Charles County charges. On the facts of this case, it is clear that he was.

When called upon to offer a factual basis for the acceptance of the guilty plea in St. Mary's County, the State offered the following paragraphs from the report of the Maryland State Police:

"During the past four years, J.W. Copsey has engaged [the victim] in fellatio and anal intercourse. This began four years ago with Copsey performing fellatio on the ten-year-old boy. This progressed to Copsey performing anal intercourse on [the victim] and engaging in fellatio with him. This has become an almost daily occurrence for the past two years. Copsey is fifty-nine years old and [the victim] is now fourteen years of age.

On 11/15/84, I was contacted by Corporal Currence of the Maryland State Police Barracks in Leonardtown. Corporal Currence advised me that he was investigating a sex offense between a fifty-nine year old and a fourteen-year-old boy. The offenses took place during a five-year period, from the time [the victim] was ten years old to the present. Corporal Currence further advised me that these sex offenses took place at Mickey's Shell gas station in St. Mary's County *as well as several locations in Charles County. The offenses usually took place at a two-room house that Copsey owned on Oaks Road in Charlotte Hall, Charles County, Maryland, but on one occasion there was sex offense committed at a residence in Cobb Island, Charles County, Maryland, and during*

*the summer there were several instances where the sex offense occurred on Copsey's boat in the area of Benedict."* (Emphasis supplied).

The first count of the Charles County indictment charged the appellant with a second-degree sexual offense upon the victim on November 26, 1980, "at the James Wilmer Copsey house on Oaks Road, Charlotte Hall, Charles County, Maryland." The second and third counts charged fellatio and anal intercourse, respectively, upon the same victim on a continuing basis from June through August, 1983, "in Charles County." The fourth count charged a fourth-degree sexual offense on October 5, 1984, "in Charles County."

If the case in St. Mary's County had gone to trial, it is beyond dispute that proof of any of the offenses charged in the Charles County indictment would, standing alone or in combination, have supported a conviction in St. Mary's County. The predicate offered for the acceptance of the guilty plea was based primarily, if not exclusively, on the Charles County conduct. The appellant stood in obvious jeopardy in St. Mary's County for the criminal offenses committed in Charles County. Such jeopardy may only occur once.

This by no means suggests that both St. Mary's County and Charles County could not theoretically have gone after the appellant if their grand strategy had been carefully orchestrated. If the two state's attorneys had put their heads together and agreed:

"Hey, let's get this guy twice. You go after him in your jurisdiction with a charging document meticulously confined to conduct having occurred on your side of the county line, and I'll go after him in my jurisdiction with a charging document meticulously confined to conduct having occurred on my side of the county line,"

there would be no constitutional impediment. Close orchestration would be required, however, to avoid an inadvertent

constitutional impediment. There was no such close orchestration here.

■ Absent such meticulosity in the charging documents, the county that gets to the trial table first is permitted to offer proof of conduct occurring on either or both sides of the county line. That county may thereby, however, exhaust all the jeopardy to which the appellant can be subjected. There will be none left for the county that attempts a later prosecution. In this case, St. Mary's County exhausted all of the available jeopardy.

The solace the State seeks in *Beatty v. State,* 56 Md.App. 627, 468 A.2d 663 (1983), is simply not to be found there. That case involved a notorious and particularly vicious pattern of criminal conduct that began with two individuals kidnapping one Stephanie Ann Roper in Prince George's County, raping her in Prince George's County, transporting her to St. Mary's County, raping her again in St. Mary's County, and finally murdering her in St. Mary's County. St. Mary's County indicted both defendants for murder in the first degree, rape in the first degree, and kidnapping. Both defendants ultimately, following changes of venue, entered pleas of guilty to those three offenses. Prince George's County subsequently indicted the two defendants for, *inter alia,* rape in the first degree and kidnapping. The issue before this Court was whether the Prince George's County charges were barred by double jeopardy.

With respect to the rape, we held that the double jeopardy bar was not available. The kidnapping that preceded the rape occurred in Prince George's County, and the rape itself was consummated in that county. From the initial abduction through the consummation of the rape, there was no crossing of a county line and no occasion for Art. 27, § 465 to come into play. In holding, therefore, that the jeopardy on the other charges that attached in St. Mary's County in no way involved jeopardy for the rape perpetrated in Prince George's County, Chief Judge Gilbert wrote for this Court, at 56 Md.App. 634, 468 A.2d 663:

"The rape of the victim in Prince George's County, together with other sexual violations that took place there, were crimes committed solely within that County.... The crimes that were begun and completed in Prince George's County could not properly be charged in St. Mary's County."

When the defendants went to trial on the St. Mary's County charges, they were, to be sure, in jeopardy for some of their criminal conduct in Prince George's County. They were not, however, in jeopardy for the rape which began (with the initial abduction) and terminated exclusively within Prince George's County. As we concluded in *Beatty*, "the State's Attorney for St. Mary's County was without power to prosecute any offense begun and completed within Prince George's County." 56 Md.App. at 635, 468 A.2d 663.

By way of contrast, the venue for the second rape that occurred in St. Mary's County could well have lain, pursuant to Art. 27, § 465, in any of three counties. The abduction and initial transportation began in Prince George's County; it continued through Charles County; it came to rest in St. Mary's County. Whichever county moved first (in that case, it was St. Mary's County), that county would have placed the defendants in jeopardy for criminal conduct in furtherance of that rape perpetrated in any of the three counties. Unlike the Prince George's County rape, where the entire criminal episode occurred within a single county, the criminal episode that culminated in the St. Mary's County rape was spread over three counties. Under Art. 27, § 465, any one of those counties, *but only one of them,* could have placed the defendants in jeopardy for that entire criminal episode.

Although we held in *Beatty* that the Prince George's County prosecution for rape was not barred by double jeopardy, we held quite to the contrary with respect to the contemplated Prince George's County prosecution for kidnapping. Pointing out that that crime was a continuing offense, we concluded, at 56 Md.App. 635, 468 A.2d 663:

"The kidnapping did not end in Prince George's County even though it began there. Such an offense may be prosecuted in any jurisdiction in which it takes place."

There, the trial on the St. Mary's County charges of kidnapping placed the defendants in jeopardy for the act of kidnapping in Prince George's County. "Because the crime of kidnapping is a continuing offense, the trial of that crime in St. Mary's County terminates the prosecution of it." 56 Md.App. at 636, 468 A.2d 663.

The continuing sexual offense in the present case, unlike the Prince George's County rape dealt with in *Beatty*, involved regular transportation back and forth across the St. Mary's County/Charles County boundary. The present case, by further contrast with *Beatty*, deliberately consolidated a number of potentially discrete sexual offenses into a single continuing offense.

What happened here is readily apparent and is understandable. This trial and the arrest that preceded it attracted a great deal of notoriety in the local Southern Maryland community. When pursuant to the plea bargain or otherwise, the appellant got off with a suspended sentence, there was a public clamor that justice had not been done. The elected prosecutor, sensitive to the mood of his community, went forward with a plausible attempt to bring the appellant once again before the bar of justice.

In terms of constitutional algebra, it was a case that dissatisfaction with the leniency of the first punishment spurred the effort to subject the appellant, if possible, to a second and harsher punishment. Without denigrating either the community response to the first punishment nor the prosecutor's sensitivity to the mood of his constituency, we nonetheless hold that multiple punishment for the same offense is the core danger that the double jeopardy clause is designed to bar. Accordingly, the appellant's motion to dismiss the Charles County prosecution should have been granted.

JUDGMENT REVERSED; COSTS TO BE PAID BY CHARLES COUNTY.