**Rose A. YOUNG, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 98–CF–1647.**

District of Columbia Court of Appeals.

Argued Sept. 23, 1999.
Decided Feb. 17, 2000.

---

944

Linda Sroufe, appointed by the court, Oxon Hill, MD, for appellant.

Chrisellen R. Kolb, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, John R. Fisher, Mary–Patrice Brown, and Ryan H. Rainey, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, STEADMAN and RUIZ, Associate Judges.

STEADMAN, Associate Judge.

Before us is an interlocutory pretrial appeal. Appellant Rose Young was acquitted at a prior trial of first-degree child abuse. She now challenges on double jeopardy grounds the government's right to try her on a new count of first-degree child abuse. The government asserts that the new count is based on an act of abuse (scalding the child's foot) distinct from the act of abuse in the prior count (malnutrition). The trial court denied appellant's motion to dismiss the new count. We affirm.

## I.

Appellant's 23–month–old son Devonta died on August 20, 1996. Appellant was subsequently indicted and tried on three counts: (1) first degree cruelty to a child in violation of D.C.Code § 22–901(a) based on failure to provide adequate food and nutrition to Devonta from October 1995 to August 20, 1996; (2) second degree cruelty to a child in violation of D.C.Code § 22–901(b) based on daily beatings administered to Devonta from June 1 to August 18, 1996; and (3) second degree murder of Devonta based on his death as the result of a single beating administered on August 18, 19, or 20, 1996.

At the trial in June 1997, in addition to offering evidence of the charged acts, the government introduced evidence of certain uncharged acts of abuse and neglect of Devonta in an attempt to disprove appellant's contention that she had never mistreated her son. One of these uncharged acts was an incident on October 22 or 23, 1995, during which appellant allegedly scalded Devonta's foot in hot water and

then failed to seek appropriate medical attention for him.

The jury acquitted appellant on the first count, convicted her on the second count, acquitted her on the third count of second-degree murder, but hung on the lesser-included offense of involuntary manslaughter. Over a year later, in July 1998, the government obtained a new indictment of appellant for first degree cruelty to a child in violation of D.C.Code § 22–901(a), this time based on the scalding of Devonta's foot on October 22 or 23, 1995.[1] Appellant filed a motion to dismiss, which was denied.

Denial of a motion to dismiss an indictment on double jeopardy grounds is the proper subject of an interlocutory appeal and receives *de novo* review. *Green v. United States*, 584 A.2d 599, 601 (D.C. 1991). Appellant argues that the new indictment violates double jeopardy in two ways. Appellant first contends that she is being put in jeopardy twice for the "same offense" under the "same elements" test formulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Specifically, she argues that the government prosecuted her for a single course of conduct during her 1997 trial, namely, abuse of Devonta from October 1995 until his death in August 1996, and that it therefore cannot prosecute her now for a single act of abuse during that same time period. Second, appellant suggests that, even if *Blockburger* would allow a single trial on multiple counts, it does not permit successive trials. Alternately, she urges us to voluntarily adopt such a distinction.[2]

1. The 1998 indictment actually fails to indicate the specific conduct underlying the charge. However, the government has since clarified, and appellant does not contest, that the 1998 indictment is limited solely to the alleged act of scalding Devonta's foot.

2. Appellant also argues that the indictment violates due process, but this argument is not properly raised in an interlocutory appeal. *See Midland Asphalt Corp. v. United States*,

489 U.S. 794, 801, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989)("[A]ny legal rule can be said to give rise to a 'right not to be tried' if failure to observe it requires the trial court to dismiss the indictment or terminate the trial. But that is assuredly not the sense relevant for purposes of the exception to the final judgment rule."); *Abney v. United States*, 431 U.S. 651, 663, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)(holding that availability of interlocu-

## II.

Appellant relies heavily on the *Blockburger* "same elements" test to argue that she is being tried twice for the "same offense." In *Blockburger*, the Supreme Court established the rule that absent any expressed legislative intent, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180. It is settled by subsequent Supreme Court cases applied in our own jurisprudence that this test involves a comparison of the statutory elements of the offenses, not the facts and evidence underlying each charge. *Byrd v. United States*, 598 A.2d 386, 389 (D.C. 1991)(en banc). *See also, e.g., Silver v. United States*, 726 A.2d 191, 194 (D.C.1999)(applying test); *Hanna v. United States*, 666 A.2d 845, 852 (D.C. 1995)(same). While appellant properly states the "same elements" test, she misapplies it in practice. The "same elements" test is used to determine whether separate statutory provisions both criminalize a single act. Since appellant's 1996 and 1998 indictments plainly charge the same "offense," namely, first degree cruelty to a child pursuant to D.C.Code § 22–901(a), the "same elements" test simply does not apply. Similarly, appellant is obviously correct that second degree cruelty to a child under D.C.Code § 22–901(b) is a lesser included offense of first degree cruelty under D.C.Code § 22–901(a). The critical question for double jeopardy purposes is whether the same criminal act is at issue.

Once extracted from the "same elements" framework in which she tries to place it, appellant's argument at bottom turns on whether the two counts are based upon legally and factually distinct acts of child abuse. "[T]he Fifth Amendment does not prohibit separate and cumulative punishment for separate criminal acts." *Owens v. United States*, 497 A.2d 1086, 1094–95 (D.C.1985). *See, e.g., Jones v. United States*, 362 A.2d 718 (D.C.1976)(two separate armed robbery convictions for taking money from cash register and from salesclerk's purse). Appellant claims that the government is trying her twice, under the same statutory provision, for a single criminal act. Although she concedes that the government could have tried her for the foot-scalding incident during her 1997 trial as a separate crime, she argues that it cannot "carve out" a single incident now when it previously had consciously elected to prosecute her for a "course of conduct" including that incident.

In arguing that the government prosecuted her for a "course of conduct," appellant makes several observations. First, she notes, throughout the trial, the government theorized that appellant abused and neglected Devonta for most of his life and introduced evidence of other uncharged acts of abuse, including the foot-scalding.[3] Second, she says, both of the 1997 cruelty counts bore indicia of "continuing crimes" in that the indictments covered broad time frames, the government offered proof of multiple acts, and the government never elected a single incident under either count for jury unanimity purposes.

tory appeal does not "extend beyond the claim of former jeopardy and encompass other claims presented to, and rejected by, the district court in passing on the accused's motion to dismiss"). The same principle precludes any consideration of appellant's argument based on the Department of Justice's "Petite Policy," which is barred in addition by the principle that arguments cannot be raised for the first time on appeal. *Southall v. United States*, 716 A.2d 183, 189 (D.C.1998).

3. The government explains that at the time of the first indictment it did not think it had sufficiently strong evidence to indict appellant on first-degree child abuse as a result of the child's burnt foot. Only after considering the testimony of two expert witnesses at the trial itself did the government conclude otherwise.

While these observations may be accurate, we cannot agree with appellant's underlying conclusion that she was tried for a single continuing crime culminating in Devonta's death. The indictment, the closing arguments, and the jury instructions[4] all indicate that appellant was charged in each count with specific conduct in specific time frames. The first count alleged failure to provide adequate food and nutrition to Devonta from October 1995 until August 20, 1996. The second count alleged multiple beatings administered to Devonta between June 1 and August 18, 1996. The third count alleged a single fatal beating administered to Devonta on August 18, 19, or 20, 1996.

▪ Further, while it is true that the government tried to put appellant's alleged abuse into a bigger picture to prove identity and intent, partially through evidence of other uncharged abuse, it does not follow that appellant was in jeopardy during the 1997 trial for every act of child abuse against Devonta between October 1995 and August 1996. She could only be convicted on the basis of the indictment, *Wooley v.*

*United States,* 697 A.2d 777 (D.C.1997), and the instructions given to the jury. See note 4, *supra,* and note 8, *infra.* Similarly, the fact that the government likely could have brought a single indictment for all acts during that time period under the permissive joinder rule embodied in Super. Ct.Crim. R. 8(a)[5] does not mean that the government was compelled to do so on pain of risking a double jeopardy bar.[6] See Part III, *infra.*

While it is true that the first degree cruelty count alleged a "course of conduct" which did encompass the date on which the foot-scalding incident allegedly occurred,[7] it does not follow that the foot-scalding incident was included in that course of conduct. Appellant herself recognizes that failure to provide adequate food and nutrition to a child necessarily takes place over a period of time and thus is qualitatively different from a single act of beating or scalding. The government made the malnourishment allegation as specific as possible in light of its very nature. The fact that it is possible for long-term malnourishment to overlap in time with discrete

4. The jury was instructed, in relevant part, that "a separate criminal offense is charged in each count of the indictment"; that "each offense and the evidence which applies to it should be considered separately"; that the jury "should return separate verdicts as to each count of the indictment"; that the indictment charged offenses committed "on or about specified dates" but that it was sufficient for the government to prove that the offenses were committed "on a date reasonably near the dates alleged"; that the first count of the indictment charged appellant with "the offense of first degree cruelty to children, and this allegation relates to the alleged failure to provide appropriate food and nutrition for the child"; that the second count of the indictment charged appellant with "the offense of second degree cruelty to children and this relates to the alleged spanking or beating of the child as alleged by the government"; and that the third count of the indictment charged appellant with "second degree murder while armed." The trial court's instructions describing the counts in the indictment did not mention the foot scalding incident. Only in stating the basic elements of the criminal offenses first and sec-

ond degree child abuse did the trial court use the more general term "maltreatment."

5. Super. Ct.Crim. R. 8(a) allows the government to charge a single defendant with multiple offenses in a single indictment if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

6. *Cf. Wilson v. United States,* 590 A.2d 1002, 1004 (D.C.1991)("the prosecutor may not arbitrarily create separate offenses by dividing a continuous course of conduct into separate units of space and time and charging a different offense for each") (citing *Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

7. Both the trial court and the government suggest that the time frame of the malnutrition charge and the time frame of the foot-scalding incident do not overlap; however, this seems clearly incorrect, since the malnutrition charge included the month of October 1995.

acts of physical abuse simply reflects the unique obligation of parents to take affirmative actions for their children's benefit, such as feeding them, while refraining from other actions, such as assaulting them. *Cf. Robinson v. United States,* 317 A.2d 508, 514 (D.C.1974)(sustaining two separate convictions for abuse of single child on January 10 and third conviction for abuse of same child on January 11).

Despite appellant's attempts to convince us otherwise, this is not a case in which the defendant was tried on a single count of child abuse for multiple similar acts of abuse during a given time period and then subsequently indicted for a single incident of the same type within the same time frame. *See, e.g., Copsey v. State,* 67 Md. App. 223, 507 A.2d 186 (1986) (holding that defendant was put in jeopardy during first trial for every alleged act of child sexual abuse during the time frame specified in the indictment because the jury could have convicted him on the basis of any one of those acts). That analogy might be compelling if the 1998 indictment had charged, for example, malnourishment of Devonta in January 1996 or a beating of him in July 1996, but it is not persuasive on the facts of this case.

### III.

Appellant next argues that, even if the government could have tried her on the foot-scalding incident as a separate crime in 1997, trying her successively for acts of abuse against the same child during a discrete time period violates double jeopardy. We find no authority in support of this argument.

Appellant's argument relies largely on Justice Brennan's concurring opinion in *Ashe v. Swenson,* 397 U.S. 436, 448–460, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)(Brennan J., concurring). The majority opinion in *Ashe* addresses the collateral estoppel effect of the Double Jeopardy Clause in successive prosecutions. A brief synopsis may be useful background for understanding Justice Brennan's opinion.

*Ashe* involved successive prosecutions arising out of a single incident in which three to four men robbed six other men who were playing poker together in a home basement. Ashe was tried and acquitted of robbing one of the victims, but was subsequently tried and convicted of robbing another one of the victims. The government presented almost identical evidence at both trials and even admitted that it had used the first trial as a "dry run" of the second. *Id.* at 447, 90 S.Ct. 1189. The Supreme Court held that the Double Jeopardy Clause collaterally estopped the government from re-trying the "single rationally conceivable issue in dispute . . . whether the petitioner had been one of the robbers." *Id.* at 445, 90 S.Ct. 1189. The Court described the question as solely "whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again."[8] *Id.* at 446, 90 S.Ct. 1189.

The concurring opinion upon which appellant relies goes beyond the collateral estoppel issue addressed in the majority opinion and identifies a second basis for overturning Ashe's conviction. Justice Brennan states: "In my view, the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single crimi-

---

**8.** The October 1995 foot-scalding incident was never "litigated" in the 1997 trial for double jeopardy purposes since the jury did not have to agree on whether appellant scalded Devonta's foot to acquit or convict her of any of the charges before it. It certainly was not the "single rationally conceivable issue in dispute." *Ashe, supra,* 397 U.S. at 445, 90 S.Ct. 1189. As a practical matter, appellant may have felt compelled to defend against that evidence introduced to prove identity and intent. That practical necessity may be relevant to her due process argument, which is not properly before this court, but it does not inform the double jeopardy analysis.

nal act, occurrence, episode, or transaction." *Id.* at 453–54, 90 S.Ct. 1189. Thus, he concludes, the government could not bring successive prosecutions against Ashe for the robbery of each of the six victims. *Id.* at 458–59, 90 S.Ct. 1189.

■ Appellant cites no authority for the proposition that Justice Brennan's reading of the Double Jeopardy Clause is correct. Indeed, the law is to the contrary. It is true that the Supreme Court, in a majority opinion by Justice Brennan, briefly adopted a conceptually related "same conduct" test in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).[9] However, *Grady* was soon overruled by *United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), in which the Court concluded that the test "lack[ed] constitutional roots" and was "wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Dixon* makes clear that the Double Jeopardy Clause does not distinguish between multiple charges brought in a single trial and successive prosecutions. The *Dixon* court found "no authority whatsoever" for the "bald assertion" that the government is sometimes obligated to prosecute separate offenses together, *id.,* concluding that collateral estoppel "may bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts. But this does not establish that the Government 'must ... bring its prosecutions ... together.' It is entirely free to

bring them separately and can win convictions in both." *Id.* at 705, 113 S.Ct. 2849.[10]

For the foregoing reasons, we agree with the trial court that nothing in the Double Jeopardy Clause proscribes the government from bringing this new action against appellant. The trial court order appealed from must be and hereby is

*Affirmed.*

---

9. Like *Blockburger'* s "same elements" test, the "same conduct" test applied when a defendant was charged for one criminal act under two statutory provisions, but the latter test was more stringent in that it applied even if the defendant had never before been put in jeopardy for the charged offense. The "same conduct" test barred successive prosecution "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been tried." *Grady, supra,* 495 U.S. at 510, 110 S.Ct. 2084. Thus, in *Grady,* the Court concluded that prosecuting Corbin for

reckless homicide or criminally negligent homicide would violate double jeopardy where he had already been convicted of driving offenses which constituted the "reckless" or "negligent" behavior critical to the government's case. *Id.* at 523, 110 S.Ct. 2084.

10. Even assuming we might have such authority, we decline to adopt, as appellant urges, the mandatory joinder provisions of the Model Penal Code which reflect Justice Brennan's approach. The permissive joinder rules in Super. Ct.Crim. R. 8(a) reflect the established policy of this jurisdiction.