**Thomas JOHN and Anna John, Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**Nos. 02–CT–351, 02–CT–352.**

District of Columbia Court of Appeals.

Argued Nov. 4, 2002.
Decided Dec. 26, 2002.

sufficient to prove that Price was guilty as a principal.

Ian A. Williams and William J. Garber, with whom Kyle A. McGonigal was on the brief, Washington, for appellants.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Supervisory Corporation Counsel, were on the brief, for appellee.

Before STEADMAN, SCHWELB and REID, Associate Judges.

STEADMAN, Associate Judge.

This is a pretrial appeal from a criminal prosecution which the appellants claim violates their rights under the Double Jeopardy Clause. The current prosecution is for numerous alleged violations of the housing code, 14 DCMR § 100.1 *et seq,* (2001), in an apartment building controlled by appellants. The double jeopardy claim is based upon a civil proceeding in which the District obtained a temporary receivership of the apartment building in order to remedy housing code violations, pursuant to the newly-enacted Tenant Receivership Act ("TRA" or the "Act"), D.C.Code §§ 42–3651.01 *et seq.* (2002 Supp.)[1] That Act authorizes such a receivership where a building has been cited for housing code violations that pose "a serious threat to the health, safety, or security of the tenants" and such violations after notice have not been timely abated. § 42–3651.02. The appellants argue that the receivership action was effectively a criminal prosecution for the same violations with which they are now charged, invoking the criteria set forth by the Supreme Court in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). We hold that proceedings under the Tenant Receivership Act are not criminal in nature and hence affirm the trial court's rejection of the double jeopardy claim.[2]

1. Although originally introduced as a separate bill, based on similar laws in New York City and San Francisco, the legislation eventually was enacted as Title V "Tenant Receivership" of a larger "Abatement and Condemnation of Nuisance Properties Omnibus Amendment Act of 2000," 48 D.C.Reg. 1888 (2001). Both parties refer to Title V as the "Tenant Receivership Act," and we shall do likewise for convenience.

2. Appellants also assert that, quite apart from the double jeopardy claim, the instant prosecution is statutorily barred by what appellants claim is a prohibition of dual criminal and civil prosecutions under D.C.Code §§ 1–303.05 and 6–751.09(d) (2001) and 14 DCMR § 102.4 (2001). This argument is not properly before us in this constitutionally-based interlocutory appeal. *See Young v. United States,* 745 A.2d 943, 945 n. 2 (D.C.2000); *Gant v. United States,* 467 A.2d 968, 970 (D.C. 1983). We are unpersuaded by appellants' argument that these and other District statutes bearing on residential housing illuminate in any significant way the double jeopardy inquiry focused on the provisions of the TRA.

### A.

Since 1991, appellants Thomas and Anna John have had an interest in Parkwell Associates ("Parkwell"), which owns a forty-four unit rental apartment building, the Parkwell, in Columbia Heights. In August 2001, the District filed an information alleging that the Johns committed 64,642 violations of various provisions of the housing code between October 2000 and August 2001. The maximum penalty for each violation is 90 days and/or $300, as well as continuing penalties for each day a particular violation remains unabated.

As of December 2001, a prospective buyer, Fleetwood Capitol, had remained interested in purchasing the building by February 2002. However, on December 18, 2001, the District, acting under the Tenant Receivership Act, initiated a civil proceeding and gained a fourteen-day ex parte receivership of the Parkwell. § 42–3651.04(b). In January 2002, an ongoing receivership was established in order to undertake a rehabilitation of the housing conditions at the Parkwell. § 42–3651.05(b), .06. Since the inception of the receivership, the Parkwell has been managed by Fred A. Smith, who pursuant to a rehabilitation plan collects rents and applies them to abatement of the housing code violations and to other purposes reasonably necessary to manage and maintain the property. § 42–3651.06(c). He receives a court-approved fee for his management services. § 42–3651.06(f). The Johns assert that the receivership has left them vulnerable to various creditors, has thwarted the sale to Fleetwood because Fleetwood could not secure financing for the purchase of a property in receivership, and generally has deprived them of the use and management of their property.

### B.

In *Hudson v. United States, supra,* the Supreme Court held that under certain circumstances a civil penalty may be so punitive in intent, purpose, or effect that it would constitute a criminal punishment and thus bar under the double jeopardy clause any separate prosecution under a criminal statute. The appellants in that case were prosecuted on criminal charges related to a banking conspiracy to make illegal loans. They argued that the prosecution violated their rights under the double jeopardy clause because they had been subjected to sizeable civil monetary penalties and prohibitions against engaging in banking affairs in a prior action by the Office of the Comptroller of the Currency for the same illegal activities.

The Supreme Court ruled that a two-step analysis is required to decide whether a prior civil penalty was effectively a criminal punishment. First, the court must attempt to determine whether the legislature intended the penalty to be criminal or civil. But even where the legislature indicates an intent to create a civil penalty, the court must make a second inquiry as to whether the statutory scheme is "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." 522 U.S. at 99, 118 S.Ct. 488. As guidelines in undertaking this second inquiry, *Hudson* adopted seven factors to consider: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. The

Court went on to caution: "It is important to note, however, that these factors must be considered in relation to the statute on its face and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 522 U.S. at 100, 118 S.Ct. 488 (citations omitted).

### C.

Applying the teaching of *Hudson*, we first examine the Tenant Receivership Act itself.[3] We think it plain that the legislature had in mind a civil rather than criminal purpose. At the outset, we note that a receivership is a quintessential civil equitable action. 65 AM. JUR. 2D *Receivers* § 7 (2001). The very first section of the Act, entitled "Purpose of the Appointment of a Receiver," states that it is intended to "safeguard the health, safety and security of the tenants of a rental accommodation if there exists a violation of District of Columbia or federal law which seriously threatens the tenant's [sic] health, safety, or security." § 42–3651.01. The receiver's powers are expressly so limited: "The receiver shall not take actions inconsistent with this purpose or take actions other than those necessary and proper to the maintenance and repair of the rental housing accommodation." *Id.* The receiver is required to, "as a first priority, [use] no more than one-half of monthly rental income, to abate housing code violations" and "as a second priority, for other purposes reasonably necessary in the ordinary course of business of the property, including maintenance and upkeep of the rental housing accommodation, payment of utility bills, mortgages and other debts." § 42–3651.06(c)(1), (2). Specifically named

among the responsibilities of the receiver is to "preserve all property and records with which the receiver has been entrusted." § 42–3651.05(a)(6). The receivership is to terminate as soon as the grounds on which the appointment of the receiver was based no longer exist. § 42–3651.07(a).

Additionally, several procedural provisions of the Act indicate that it was not intended to create a criminal penalty. First, the burden of proof of violations under the statute is by a preponderance of the evidence, suggesting its civil nature. § 42–3651.05(a)(1). Moreover, proceedings are begun by filing a petition rather than an information, and the proceedings may be brought by a majority of tenants, as well as the Corporation Counsel. § 42–3651.03(b). Finally, as already mentioned, the receivership invokes an equitable remedy as it orders a receiver to manage the property, subject to court review. *See* D.C.Code § 11–921(a) (2001) (civil jurisdiction extends to any civil action or other matter (at law or in equity)). In short, the whole focus of the statute is not on punishing the owners or others who have caused the housing violations, but instead is on remedying the violations to protect the tenants.

We next turn to an examination of the seven *Hudson* factors. Here as in *Hudson*, "the sanctions imposed do not involve an 'affirmative disability or restraint' as that term is normally understood. While petitioners have been prohibited from further participating in the banking industry, this is certainly nothing approaching the infamous punishment of imprisonment." 522 U.S. at 104, 118 S.Ct. 488. While the Johns have temporarily been unable to use their property while the receiver remedies conditions as they themselves should have

---

**3.** We are cited to no particularly enlightening legislative history nor have we found any.

See note 1, *supra*.

done, even "money penalties ... have [not] historically been viewed as punishment."[4] *Id.* Indeed, a receivership itself has not historically been regarded as punishment, but rather a mechanism to achieve equitable ends. *See D.C. v. Jerry M.,* 738 A.2d 1206, 1213 (D.C.1999); *United States v. Woods,* 949 F.2d 175, 177 (5th Cir.1991), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1562, 118 L.Ed.2d 210 (1992) (holding that a receivership was not punishment and a subsequent criminal prosecution did not implicate double jeopardy considerations). Nor is the receivership designed in any real sense to promote the traditional punishment aims of retribution and deterrence. The plain "alternative purpose," nonpunitive in nature,[5] of the statute is to safeguard the health, safety and security of the tenants; by remedying the consequences of violations with circumscribed powers in the receiver. Nor is the receivership remedy excessive in relation to this purpose.[6] The Johns argue that the receivership affects them in a particularly punitive way, as they have been frustrated in their aborted plans to sell the Parkwell. However, as previously noted, the *Hudson* inquiry is directed to the Act on its face and not as it may affect a particular case.[7] All in all, we are quite unable to discern the "clearest proof" required to transform the Act into one that imposes a criminal penalty.

Accordingly, the trial court order denying appellants' claim of a constitutional double jeopardy violation in proceeding with the criminal prosecution is

*Affirmed.*

---

4. The Court required "the clearest proof" that money penalties are "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary," and observed that "the payment of fixed or variable sums of money [is a] sanction which has been recognized as enforceable by civil proceedings since the original revenue law of 1789." 522 U.S. at 104, 118 S.Ct. 488 (citations omitted).

5. Appellants misread this *Hudson* factor as requiring a consideration of alternative means that the District could have employed apart from receivership to deal with the perceived problems flowing from the violations. *See Kennedy v. Mendoza,* 372 U.S. 144, 169–70 & n. 25, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

6. The remaining two *Hudson* factors are essentially neutral. Scienter is not a factor in the TRA, but neither is it required in housing code criminal prosecutions. And while the behavior justifying the TRA may be the same as that involved in the criminal prosecution, only in the latter do the Johns face imprisonment and/or fines.

7. Appellants argue the contrary, but the Supreme Court makes this clear in its exposition of the issue. *Hudson, supra,* 522 U.S. at 101–02, 118 S.Ct. 488.