Leroy **FARRELL**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 92–CO–1065.

District of Columbia Court of Appeals.

Argued Aug. 4, 1994.

Decided Aug. 17, 1994.

Laurie B. Davis, Public Defender Service, with whom James Klein and Sandra K. Levick, Public Defender Service, were on the brief, for appellant.

Thomas C. Black, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Julieanne Himelstein, Laura A. Cordero, and Lilly Ann Sanchez, Asst. U.S. Attys., were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

■ Appellant brings this interlocutory appeal from an order of the trial court directing his commitment to Saint Elizabeths Hospital pursuant to D.C.Code § 24–301(a) (1989) for a 60–day evaluation to assist the court in determining whether there is a substantial probability that appellant will become competent to stand trial. *See Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). The government has moved to dismiss the appeal for lack of a final order, contending it does not come within the exception to the final order rule enunciated in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See, e.g., Stein v. United States,* 532 A.2d 641, 643 (D.C.1987), *cert. denied,* 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988). Although the issue of appealability is not free of doubt, we deny the motion to dismiss and hold the order to be appealable under *Cohen.* *See United States v. Weissberger,* 292 U.S.App.D.C. 412, 415–16, 951 F.2d 392, 395–97 (1991); *United States v. Donofrio,* 896 F.2d 1301, 1303 (11th Cir.), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990); *United States v. Gold,* 790 F.2d 235, 237–39 (2d Cir.1986).

■ On the merits, we affirm the order of commitment. On September 2, 1992, Judge Bowers found appellant incompetent to stand trial, a finding which neither the government nor appellant disputed. Upon such a finding, D.C.Code § 24–301(a) provides that "the court *shall* order the accused confined to a hospital for the mentally ill" (emphasis added). The commitment, by its terms, is mandatory; the trial court has no discretion not to order it.[1] *Cf.,* for example, *Donofrio,* 896 F.2d at 1302 (holding similar language in federal Insanity Defense Reform Act of 1984 to be mandatory). However, the commitment is not indeterminate; constitutionally, under *Jackson v. Indiana, supra,* "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Jackson,* 406 U.S. at 738, 92 S.Ct. at 1858. Judge Bowers set a limit of sixty days for appellant's commitment.

---

1. The mandatory language is in explicit contrast to the earlier language in the same statute *permitting* the court ("the court may order") to commit the defendant to the hospital preparatory to a judicial determination of present incompetency.

Appellant contends that, if read according to its mandatory terms (as limited by *Jackson* ), § 24–301(a) violates constitutional due process by "requir[ing] commitment of a defendant on the basis solely of a finding that the defendant is incompetent to stand trial." This argument cannot be reconciled with *Jackson* itself, which presupposed the constitutionality of temporally limited commitment, though mandatory,[2] of "a person charged . . . with a criminal offense who is committed solely on account of his incapacity to proceed to trial," 406 U.S. at 738, 92 S.Ct. at 1858; *see id.* at 725, 92 S.Ct. at 1851 ("Were the state's factual premise that Jackson's commitment is only temporary a valid one, this might well be a different case"). As we recognized in *Thomas v. United States*, 418 A.2d 122, 126 (D.C.1980), the Supreme Court's concern in *Jackson* was with the constitutionality of "an *indefinite* commitment on the ground of incompetency alone." 406 U.S. at 733, 92 S.Ct. at 1855 (emphasis added). By contrast, the Court impliedly approved lower federal court decisions which sustained the constitutionality of the then-federal commitment statute by construing it so that, "[w]ithout a finding of dangerousness, one committed thereunder can be held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future." *Id. See also United States v. Shawar*, 865 F.2d 856, 863–64 (7th Cir.1989) (upholding, in light of *Jackson*, mandatory commitment procedure of Insanity Defense Reform Act of 1984 against due process attack); *United States v. Donofrio*, 896 F.2d at 1303 (same).

Appellant's reliance on more recent Supreme Court decisions, particularly *Riggins v. Nevada*, —— U.S. ——, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), as requiring an individual "least restrictive alternative" determination before commitment can be ordered consistent with *Jackson*, is misguided. Section 24–301(a) reflects the legislative judgment that,

for the abbreviated length of time *Jackson* permits, the hospital environment *is* the least restrictive setting in which the intensely medical judgment and recommendation to the court can be reached as to the likelihood of the accused's regaining competency. The Supreme Court's concern in *Riggins* with forced medication of a defendant with antipsychotic drugs, and the resulting possible impairment of his "constitutionally protected trial rights," *id.* —— U.S. at ——, 112 S.Ct. at 1816, casts no doubt on Congress' determination that temporary in-patient evaluation is essential before a finding can be made that the accused may not be brought to trial at all.[3]

■ Appellant further argues that § 24–301(a) is unconstitutional "on the facts of this case" in the absence of "further findings on the necessity for or appropriateness of any contemplated commitment." Assuming such findings were required at all, Judge Bowers' findings were entirely adequate for constitutional purposes. He correctly understood the gravamen of appellant's argument to be that he was mentally retarded, not mentally ill, hence that he was "not ever going to be competent." But, recognizing that "a court setting can[not] substitute for the hospital setting for prolonged observations," the judge disagreed that the evidence before him demonstrated that appellant's commitment for the brief period of evaluation would be futile:

This man is not that deficient mentally with his level of deficiency which is not very, very deficient. He is sort of borderline and borderline mentally deficient may be low/average intelligence. Maybe that depends on how you interpret it.

So, some expert may not even consider him—He may not even be—I don't know. He just may not even be civilly committable as a mentally deficient person under

2. Indiana's statute at issue in *Jackson* likewise provided for mandatory commitment of a defendant found incompetent to stand trial. 406 U.S. at 717–18 n. 1, 92 S.Ct. at 1848 n. 1.

3. Of course, any administration of drugs to appellant during the two-month stay in Saint Eliza-

beths would be subject to the strictures of *Riggins* as well as *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), and our decision in *Khiem v. United States*, 612 A.2d 160 (D.C.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).

the mental retardation statute or anything of that sort.

I just don't know. I would have to hear the experts on it, but his problem was more anxiety as I understood it than deficiency, that he just cannot deal—cannot cope with dealing with what has happened and that's what I get from these reports.

\* \* \* \* \* \*

So, they [the physicians] may say that his incompetence is more attributable to his anxiety than to any mental deficiency or they may say his level of mental deficiency, namely borderline, is not something that would render him incompetent.

These findings based on the record before the trial court are not clearly erroneous. D.C.Code § 17–305(a) (1989).

The government's "[c]onstitutional power to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace." *Khiem v. United States, supra* note 3, 612 A.2d at 167 (quoting *Illinois v. Allen,* 397 U.S. 337, 347, 90 S.Ct. 1057, 1063, 25 L.Ed.2d 353 (1970)). D.C.Code § 24–301(a), as limited by *Jackson,* effectuates that power by requiring hospitalization for a limited time to permit expert evaluation and treatment that will aid the court in deciding whether the accused is likely to gain competency to stand trial in the foreseeable future. The fact that, as appellant instructs us, other jurisdictions have relaxed the mandatory nature of such commitment or adopted more elastic procedures does not establish the invalidity of the District's scheme. Congress could properly have determined that requiring—as appellant would—an *ex ante* determination of the "appropriateness of . . . commitment," *i.e.,* of the accused's amenability to treatment and probable attainment of competency, even before hospitalization can be ordered is contrary to the important governmental interest underlying the statute. *Cf. Khiem,* 612 A.2d at 174 (rejecting "Khiem's claim that physicians may not inaugurate a course of treatment without advance assurance of probable success").

We conclude that the 60–day commitment which Judge Bowers ordered is consistent with the statute and the Constitution, and therefore affirm his order. The mandate shall issue immediately. D.C.App.R. 41(a) (1993).

*So ordered.*