Sylvia J. ROLINSKI, Appellant,

v.

Michael J. LEWIS, Appellee.

No. 01–CV–773.

District of Columbia Court of Appeals.

Reargued en banc May 12, 2003.

Decided July 17, 2003.

---

John Tremain May, Washington, DC, for appellant.

Nicholas D. Dale, Bethesda, MD, for appellee.

Before WAGNER, Chief Judge, TERRY, STEADMAN, SCHWELB, FARRELL, RUIZ, REID, GLICKMAN, and WASHINGTON, Associate Judges.

GLICKMAN, Associate J.

This is an interlocutory appeal from the denial of a motion to dismiss a complaint for legal malpractice on grounds of *forum non conveniens*. *See* D.C.Code § 13–425 (2001). In *Frost v. Peoples Drug Store,* 327 A.2d 810, 812–13 (D.C.1974), this court held such denials immediately appealable as a matter of right under the collateral order doctrine that the Supreme Court enunciated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The full court reaffirmed that holding in 1985 by a five to four margin in *Jenkins v. Smith,* 499 A.2d 128 (D.C.1985) (en banc) (per curiam); *see also Jenkins v. Smith,* 535 A.2d 1367 (D.C.1987) (en banc) (issuing opinions expanding on per curiam decision). Subsequent to our decisions in those cases, however, a unanimous Supreme Court reached the opposite conclusion and held in *Van Cauwenberghe v. Biard,* 486 U.S. 517, 527–30, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), that denials of *forum non conveniens* motions are not

appealable under the collateral order doctrine. Despite that holding, until the present case we have not revisited the issue, though individual judges have urged the court to do so. *See Beard v. South Main Bank,* 615 A.2d 203, 212–13 (D.C.1992) (Terry, J., concurring).

The appellee in this case initially did not question our jurisdiction to hear this appeal. But "consent of the parties cannot enlarge our jurisdiction." *Burtoff v. Burtoff,* 390 A.2d 989, 991 (D.C.1978). "[W]here a substantial question exists as to this court's subject matter jurisdiction, it is our obligation to raise it, *sua sponte,* even though no party has asked us to consider it." *Murphy v. McCloud,* 650 A.2d 202, 203 n. 4 (D.C.1994). After oral argument before a division of the court, the full court decided *sua sponte* to set this case for en banc review to consider whether to follow *Van Cauwenberghe.* We directed the parties to brief and argue that question.

As we have done in the past, we now decide again to adhere to the Supreme Court's teaching regarding the applicability of the collateral order doctrine. We are obliged to overrule *Frost* and *Jenkins* and hold that denials of *forum non conveniens* motions to dismiss are not immediately appealable as of right to this court. Since we therefore do not have jurisdiction to entertain the instant appeal, we dismiss it without reaching the merits. The dismissal is without prejudice to a potential future challenge to the trial court's ruling after a final judgment is entered in that court.

## I.

According to his complaint,[1] appellee Michael Lewis slipped and fell on the ice at a Mobil gas station in Arlington, Virginia on

---

1. For present purposes we take as true the factual allegations of the complaint. *See*

December 13, 1995. In addition to suffering physical injuries, Lewis was allegedly "the victim of racial and other discrimination and harassment" by a station attendant. Lewis hired appellant Sylvia Rolinski, a lawyer licensed in both Maryland and the District of Columbia, to sue Mobil and its employee. Lewis signed his contingency fee agreement with Rolinski in Maryland, where Rolinski lived and maintained her law office.

On August 28, 1998, Rolinski filed Lewis's lawsuit in the United States District Court for the District of Columbia. Lewis's complaint against Rolinski alleges that the case against Mobil had no connection with the District, "except that Plaintiff [Lewis] resided in the District of Columbia at the time of filing of suit, but not at the time of [the] incident." [2] On May 5, 1999, the District Court ruled that venue did not lie in the District of Columbia and granted Mobil's motion to transfer the case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406. A few months later, the Virginia District Court granted judgment on the pleadings to Mobil, holding that because Virginia rather than District of Columbia law applied to § 1406 transfers, Lewis's claim was barred by Virginia's two-year statute of limitations for personal injury actions.

A year later, in August 2000, Lewis filed suit against Rolinski in the Superior Court of the District of Columbia. By this time, Lewis was a resident of Maryland (as was Rolinski). Lewis's complaint charged that Rolinski was professionally negligent in failing to sue Mobil within the two-year Virginia statute of limitations, in lodging the Mobil lawsuit in the District of Columbia ("which was without jurisdiction to entertain such suit") instead of a proper forum, and in not appealing the District Court's decision to transfer that suit to Virginia.

■ Rolinski moved to dismiss the complaint on grounds of *forum non conveniens*. In ruling on the motion, the trial judge evaluated whether the District of Columbia was a convenient forum for the litigation by weighing the "private" and "public" interest factors listed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), assigning the burden of proof to Lewis because neither party was a resident of the District. The judge concluded that the private interests of the parties—e.g., the relative ease of access to sources of proof and the amenability of witnesses to compulsory process [3]—do not favor requiring Lewis and Rolinski to litigate their dispute in

*Blake v. Prof'l Travel Corp.* 768 A.2d 568, 569 (D.C.2001).

**2.** Interestingly, Rolinski claims that Lewis was working as her law clerk and did the research for his own case on the choice of forum and the statute of limitations applicable to this claim against Mobil—the very issues that Lewis claims Rolinski mishandled. Lewis responds that he deferred to Rolinski's judgment on those issues.

**3.** The private interest factors listed in *Gulf Oil*, all of which the judge considered, include:

1) the relative ease of access to sources of proof; 2) the availability of compulsory process for attendance of unwilling witnesses; 3) the cost of obtaining attendance of willing witnesses; 4) the possibility of viewing the premises, if view would be appropriate to the action; 5) all other practical problems concerning the ease, expedition and expense of the trial; 6) the enforceability of a judgment once obtained; 7) evidence that the plaintiff attempted to vex, harass or oppress the defendant by his choice of forum, and 8) the relative advantages and obstacles to fair trial.

*Mills v. Aetna Fire Underwriters Ins. Co.* 511 A.2d 8, 10 (D.C.1986); *accord, Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839.

another jurisdiction. Rolinski conceded that the private interest factors in this case are "neutral."

 The judge next considered the public interest factors,[4] which "emphasize the burden imposed on the forum in relation to its interest in the litigation, as well as the interest of other potential fora in addressing the dispute locally." *Smith v. Alder Branch Realty Ltd. P'ship,* 684 A.2d 1284, 1288 (D.C.1996). Rejecting Rolinski's contention that the public interest factors favor dismissal, the judge reasoned that the District of Columbia has an interest in having its courts decide the case because Rolinski is licensed to practice law in the District and the dispute relates to her conduct here in bringing the lawsuit against Mobil. Although the parties disagreed about whether "the actual malpractice" occurred in the District of Columbia (where the Mobil suit was filed) or in Maryland (where Rolinski worked and allegedly allowed the statute of limitations to run on Lewis's claims), the judge decided that it was not necessary to resolve that issue for purposes of the *forum non conveniens* motion because "a tort need not occur within a particular jurisdiction for that jurisdiction to be connected to the occurrence" (quoting *Cresta v. Neurology Center, P.A.,* 557 A.2d 156, 160 (D.C.1989) (internal quotation marks and citations omitted)). Accordingly, the judge denied Rolinski's motion to dismiss.

Rolinski then appealed the judge's ruling to this court. Focusing on the public interest factors, Rolinski contends that the District has no real connection with this controversy and should not be burdened with it. The lawsuit belongs, she argues, in Maryland, where she has her law office, where Lewis hired her as his lawyer, where both parties were resident when Lewis filed his suit against her, and—of pivotal importance—where the malpractice cause of action arose. The cause of action arose in Maryland and not the District of Columbia, Rolinski explains, because her alleged malpractice lay only in her failure to sue Mobil before the applicable two-year statute of limitations ran. If she caused injury to Lewis, Rolinski continues, it was only by her inaction up to that point, and not by her subsequent filing of the complaint against Mobil in federal court in the District of Columbia (or anything else she did or omitted doing after the limitations period had expired).[5] Hence, Rolinski argues, neither her untimely filing in the District nor her membership in the D.C. Bar means that the District has any substantial contacts with or interest in the particular dispute at hand. Moreover, Rolinski adds, because Maryland has more substantial contacts with the cause of action than the District of Columbia has, the burden was on Lewis to justify his choice of forum in order to avoid dismissal of his complaint. The judge improperly shifted

---

4. The public interest factors include:
 1) administrative difficulties caused by local court dockets congested with foreign litigation; 2) the local interest in having localized controversies decided at home; 3) the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation, and 4) the avoidance of unnecessary problems in conflict of laws and in the interpretation of the laws of another jurisdiction.
 *Mills,* 511 A.2d at 10; *accord, Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. 839.

5. Rolinski discounts Lewis's claim, which the trial judge did not address, that she was negligent in not appealing the transfer of her lawsuit against Mobil to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406. We note that the transfer order was not appealable interlocutorily, *see Ukiah Adventist Hosp. v. FTC,* 299 U.S.App. D.C. 54, 57, 981 F.2d 543, 546 (1992), and that Lewis has not furnished any reason to think the transfer was improper.

the burden of proof on the *forum non conveniens* issue to her, Rolinski claims, by not requiring Lewis to furnish such an affirmative justification.

Lewis responds that the judge properly deferred to his choice of forum because it is at best unclear where his malpractice cause of action arose and the District does have substantial contacts with the controversy. Lewis relies not only on Rolinski's conduct and Bar membership in the District of Columbia, but also on his own residence in the District at relevant times prior to the institution of the present action.[6]

## II.

■■■■ The jurisdiction of this court to hear appeals from the Superior Court is defined by statute. Subject to certain exceptions that are not pertinent to this appeal, we have jurisdiction to review only "final orders and judgments" of the Superior Court.[7] D.C.Code § 11–721(a)(1) (2001). "The lack of finality is a bar to appellate jurisdiction." *Dyer v. William S. Bergman & Assocs.*, 635 A.2d 1285, 1288 (D.C.1993). The requirement of finality serves the important policy goals of preventing "the unnecessary delays resultant from piecemeal appeals" and "refrain[ing] from deciding issues which may eventually be mooted by the final judgment." *Crown Oil & Wax Co. v. Safeco Ins. Co.*, 429 A.2d 1376, 1379 (D.C.1981).[8]

■■■■ Normally, an order or judgment is deemed to be final "only if it

6. Per his complaint, Lewis was a resident of the District of Columbia when Rolinski filed suit on his behalf in the District Court here. The implication of his arguments is that Lewis was also a resident of the District of Columbia before then, at the time the statute of limitations ran on his claims against Mobil. The record does not clearly establish that fact, however; and as mentioned earlier, Lewis alleged in his complaint that he was not a District resident when his causes of action against Mobil arose.

7. This court has been given jurisdiction over appeals from certain specified interlocutory orders and rulings of the Superior Court (but not including orders denying motions to dismiss the complaint on *forum non conveniens* or other grounds). *See, e.g.,* D.C.Code § 11–721(a)(2), (3), § 23–104 and § 23–1324(b), (d) (2001). In addition, as we discuss hereinafter, we are authorized in civil cases to permit an interlocutory appeal where the trial judge states in writing that the ruling in question "involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation or case." D.C.Code § 11–721(d). The trial judge in this case did not furnish such a statement.

8. This rule, that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits, serves a number of important purposes. It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the [trial] judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "[avoiding] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940). *See DiBella v. United States,* 369 U.S. 121, 124, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). The rule also serves the important purpose of promoting efficient judicial administration. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). Thus, as this court stated in *Crown Oil,* "[i]n determining finality, the appellate court is concerned not merely with the interests of the immediate parties but, more importantly, with those interests that 'pertain to

disposes of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *In re Estate of Chuong*, 623 A.2d 1154, 1157 (D.C.1993) (en banc) (internal quotation marks and citation omitted). "An order denying a motion to dismiss ordinarily does not meet this standard of finality and usually is not immediately appealable," *Heard v. Johnson*, 810 A.2d 871, 876 (D.C.2002) (footnote omitted), for such a ruling does not terminate the action but instead allows it to proceed. So, for instance, we have held that the denial of a motion to dismiss a complaint for lack of personal jurisdiction over the defendant is not immediately appealable as of right. *See Crown Oil*, 429 A.2d at 1379.

■ Some trial court rulings that do not conclude the litigation nonetheless are sufficiently conclusive in other respects that they satisfy the finality requirement of our jurisdictional statute. We follow the Supreme Court in recognizing a "small class" of orders that fall within this category:

> that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Cohen*, 337 U.S. at 546, 69 S.Ct. 1221. Under the so-called "collateral order" doctrine, orders in this small class are immediately appealable to this court even though they do not terminate the action in the trial court. *See Estate of Chuong*, 623 A.2d at 1157. Otherwise such orders would be "effectively" unreviewable, and the rights at stake could be lost "irrepara-

bly." *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221.

In 1974 this court concluded that what we thought of then as "[t]he broad scope of the *Cohen* holding" warranted allowing interlocutory appeals from denials of motions to dismiss on grounds of *forum non conveniens*. *Frost*, 327 A.2d at 812. Echoing the language of *Cohen*, the court justified this exception to the general rule on the ground that it would be "too late effectively to review" such denials after trial because by then "the right to a different forum, if applicable, ... [would] be lost irreparably." *Id.* at 813; *accord, Crown Oil*, 429 A.2d at 1380 ("Once there has been a trial on the merits, the very inconvenience which the doctrine seeks to avoid will have already occurred.")

By 1984, some members of this court were having second thoughts about our holding in *Frost*. In *Jenkins v. Smith*, another interlocutory appeal from a denial of a *forum non conveniens* motion, the court *sua sponte* went en banc to reconsider *Frost*'s holding. In the event, however, neither party in *Jenkins* urged us to overrule *Frost*. With the issue in that non-adversarial posture, the en banc court issued a brief per curiam opinion that declined to reexamine the jurisdictional question decided in *Frost*. 499 A.2d at 128. Four judges of the court dissented from this outcome, however. Judge Terry's opinion for the four dissenters argued that appeals from denials of *forum non conveniens* motions "do not meet the second part of the three-part test enunciated in *Cohen*: 'too important to be denied review.'" 535 A.2d at 1372. The dissent also argued that erroneous denials would "surely [be] remediable on appeal after a final judgment, just as the denial of a

the smooth functioning of our judicial system.'" 429 A.2d at 1379 (quoting *Republic*

*Natural Gas Co. v. Okla.* 334 U.S. 62, 69, 68 S.Ct. 972, 92 L.Ed. 1212 (1948)).

motion to dismiss on any other ground (*e.g.,* lack of personal or subject-matter jurisdiction) is remediable." *Id.* But in a concurring opinion on behalf of himself and two other judges in the majority, Judge Ferren took issue with this last proposition. "Once there has been a trial in an inconvenient forum," the concurrence argued, "the inconvenience as such can never be remedied." *Id.* at 1371. "In any event," Judge Ferren added, "I doubt that a reviewing court would reverse a meritorious decision and force a new trial simply because a forum, having jurisdiction, had been inconvenient." *Id.* at 1371–72.

There the matter has rested in this court for the past sixteen years. But in the meantime there was an important development in the Supreme Court. In *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), a post-*Frost* (though pre-*Jenkins*) decision, the Supreme Court had refined the collateral order doctrine, holding that "[t]o come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen,* the order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue completely separate from the merits of the action, and [ (3) ] be effectively unreviewable on appeal from a final judgment." In 1988 (a year after the opinions in *Jenkins*) the Supreme Court applied this three-part test to orders denying motions to dismiss on the ground of *forum non conveniens* and held in *Van Cauwenberghe,* 486 U.S. at 527–29, 108 S.Ct. 1945, that such orders are not immediately appealable under the collateral order doctrine.

The Supreme Court came to that conclusion because "the question of the convenience of the forum is not 'completely separate from the merits of the action' " (the second *Coopers & Lybrand* condition). *Van Cauwenberghe,* 486 U.S. at 527, 108 S.Ct. 1945. Courts deciding *forum non conveniens* motions "generally become[ ] entangled" in those merits, the Supreme Court explained, in the course of evaluating the relevant *Gulf Oil* factors. 486 U.S. at 528, 108 S.Ct. 1945. For example, in examining the accessibility of sources of proof and the availability of witnesses, a court typically "must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Id.* The public interest considerations identified in *Gulf Oil* likewise typically enmesh the court in the merits of the action:

> Public interest factors relevant to a *forum non conveniens* determination— such as the "local interest in having localized controversies decided at home" and the interest in having "the trial of a diversity case in a forum that is at home with the state law that must govern the case," [*Gulf Oil,* 330 U.S.] at 509[, 67 S.Ct. 839]—also thrust the court into the merits of the underlying dispute. To evaluate these factors, the court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum.

*Id.*[9]

Our opinions in *Frost* and *Jenkins* did not consider whether denials of *forum non*

---

9. The Court acknowledged that "in certain cases, the *forum non conveniens* determination will not require significant inquiry into the facts and legal issues presented by a case, and an immediate appeal might result in substantial savings of time and expense for both the litigants and the courts." *Id.* at 529, 108 S.Ct. 1945. But "[i]n fashioning a rule of appealability," the Court said, it "look[ed] to

*conveniens* motions satisfied the second *Coopers & Lybrand* condition of appealability. Nor, of course, could those opinions have considered the subsequent decision of the Supreme Court in *Van Cauwenberghe.* For both those reasons we are obligated to reconsider our prior holdings. Having "chosen to adopt" the Supreme Court's collateral order doctrine, we have embraced as well all three requirements for its application that the Supreme Court laid down in *Coopers & Lybrand. Estate of Chuong,* 623 A.2d at 1157. And "[b]ecause the collateral order doctrine was created and has been developed exclusively by the Supreme Court, we would normally look to that Court's decisions in determining whether the doctrine applies in a given case." *Id.* at 1158. Acting on that understanding, we went en banc in *Chuong* and reversed prior decisions that held orders disqualifying counsel to be immediately appealable, so as to follow intervening decisions of the Supreme Court that had held to the contrary.

Taking a fresh look at the jurisdictional issue then, we think that we must follow the Supreme Court's lead in *Van Cauwenberghe.* Although Rolinski urges us to be skeptical about the Supreme Court's analysis, this very case illustrates how consideration of a *forum non conveniens* motion "thrust[s] the court into the merits of the underlying dispute." 486 U.S. at 528, 108 S.Ct. 1945. Exactly as the Supreme Court envisioned, Rolinski's motion requires a court to examine the merits of her cause of action to consider the questions of "the locus of the alleged culpable conduct ... and the connection of that conduct to the plaintiff's chosen forum." *Id.* In this case those questions are neither undisputed nor easy to resolve.

The burden of establishing that the District of Columbia is an inconvenient forum ordinarily rests with the defendant. That burden is a heavy one. Once the court has considered the relevant private and public interest factors, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839. The plaintiff's choice receives less deference when neither party to the action resides in the District, however, and in certain circumstances the burden of proof shifts entirely to the plaintiff. "Where it is shown that neither party resides in the District [of Columbia] *and the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action,* the burden normally allocated to the defendant to demonstrate why dismissal is warranted for *forum non conveniens* rests instead upon the plaintiff to show why it is not." *Mills,* 511 A.2d at 11 (emphasis added). To avoid dismissal in such a case, the plaintiff must "show some reasonable justification for his institution of the action in the ... [District of Columbia] rather than in a state with which the defendant or the res, act or event in suit is more significantly connected." *Id.* (internal quotation marks, emphasis and citations omitted); *accord, Dunkwu v. Neville,* 575 A.2d 293, 295 (D.C.1990).

Neither party in this case resided in the District of Columbia when Lewis filed his lawsuit against Rolinski. To decide where to assign the burden of proof and resolve the *forum non conveniens* motion, therefore, it is necessary to determine where Lewis' malpractice claim arose and—if the answer to that question is Maryland or Virginia rather than the District—which jurisdiction has more substantial contacts with the claim. *See Coulibaly v. Malaqui-*

categories of cases, not to particular injus-

tices." *Id.*

*as,* 728 A.2d 595, 603 (D.C.1999) (holding that trial court abused its discretion in shifting burden of proof to plaintiff "without engaging in the prerequisite analysis of which forum had more substantial contacts with the action").

The question of where a cause of action for attorney malpractice arises is a question of first impression in this jurisdiction. The courts of other jurisdictions have divided on the issue. Some courts look to the place where the plaintiff was harmed. *See Weiner v. Prudential Mort. Investors, Inc.,* 557 So.2d 912, 913 (Fla.Dist.Ct.App. 1990); *Ebell v. Seapac Fisheries,* 692 P.2d 956, 958 (Alaska 1984). Other courts look to the place where the negligence occurred. *See McGuire v. Fitzsimmons,* 197 W.Va. 132, 475 S.E.2d 132, 136 (1996); *Coleman v. Gurwin,* 443 Mich. 59, 503 N.W.2d 435, 438 (1993); *Rouse Mech. v. Dahl,* 489 N.W.2d 272, 273 (Minn.Ct.App. 1992). Where the gravamen of the malpractice claim is the attorney's failure to file a lawsuit, courts have split over whether the place where the suit should have been filed is also the place where the malpractice claim arose. *Compare Weiner,* 557 So.2d at 913 (holding that a breach of contract action for failing to provide legal services arose where the suit was to have been filed), *and Rouse,* 489 N.W.2d at 273 (holding that a claim for an attorney's failure to file a mechanic's lien could be brought in the county where the lien should have been filed even though the attorney was located in another county) *with McGuire,* 475 S.E.2d at 136 (holding that an attorney's failure to file suit within the statute of limitations did not make the county where the action would have been filed the locus of the malpractice action), *and Coleman,* 503 N.W.2d at 438 (same).

Regardless of which approach this court might take to the problem, resolving it in this case would entangle us in the merits of Lewis's claim against Rolinski. Under any approach we would need to ascertain, first, the scope of Lewis's claim—including whether it encompasses only Rolinski's failure to sue Mobil before the Virginia statute of limitations ran or also what Rolinski did or did not do in connection with the suit in federal court in the District of Columbia. Then, if we were to adopt the "place of injury" approach, we would need to determine exactly when the injury to Lewis occurred and where Lewis sustained that injury (where, perhaps, he was located, i.e., residing, at that precise time). If, on the other hand, we were to adopt the "place where the negligence occurred" approach, we would need to decide where that was—in Virginia, which may have been the only state where venue was proper for the personal injury action against Mobil; in Maryland, where Rolinski evidently had her law office and did her legal work on that action; or in the District of Columbia, the jurisdiction that Rolinski and Lewis selected for their suit against Mobil. Once we answered these, and perhaps other, questions relating to the substance of Lewis's malpractice claim, we might have further detailed scrutiny of that claim yet to perform; for if we determined that the claim arose in, say, Virginia, the next step in our analysis would have to be to determine whether Virginia's or the District's contacts with the claim were the more substantial.

In this appeal we shall undertake to answer none of the foregoing questions. That Rolinski's *forum non conveniens* motion raises such questions only serves to confirm—if confirmation were needed—that the holding of a unanimous Supreme Court in *Van Cauwenberghe* is correct. A trial court order denying a motion to dismiss on grounds of *forum non conveniens* and allowing the action to proceed does not satisfy the stringent requirements of the collateral order doctrine. We have no

authority to relax those requirements in order to expand the legislatively defined limits on our jurisdiction. We therefore follow *Van Cauwenberghe*, expressly overrule the contrary holdings of *Frost* and *Jenkins*, and hold that the denial by the Superior Court of a motion to dismiss a complaint on grounds of *forum non conveniens* is not immediately appealable to this court as of right. We lack jurisdiction to entertain such an appeal.

In reaching that conclusion, we do not minimize the concern expressed in *Frost* and *Jenkins* that a ruling denying a *forum non conveniens* motion may be effectively unreviewable on appeal from a final judgment (which is the third requirement of the collateral order doctrine as articulated in *Coopers & Lybrand* ). An appellant complaining that the District of Columbia is an inconvenient forum has the heavy burden of showing that the trial court abused its "broad discretion" in denying the motion, *see Nixon Peabody LLP v. Beaupre*, 791 A.2d 34, 37 (D.C.2002). After a trial has been held and judgment entered, the appellant will usually have to demonstrate substantial prejudice to succeed on such a claim. *See In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1168 (5th Cir.1987) (en banc), *vacated on other grounds*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989) ("Unless the defendant can show that he was greatly prejudiced by the fact that the trial occurred in the particular forum selected by the plaintiff, we believe the trial's occurrence and completion bolsters the district court's original decision to deny the motion to dismiss."). Such a demonstration of prejudice is not out of the question. *See Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 881 (5th Cir.1987). But the emphasis on prejudice to the appellant may slight *forum non conveniens* claims that are predicated primarily (or exclusive-

ly, as in this case) on the public interest factors of *Gulf Oil* and the policy of not burdening the forum unnecessarily with essentially foreign controversies even where jurisdiction over them does exist. *See, e.g., Dunkwu*, 575 A.2d at 295–97. It remains the case, moreover, that "[o]nce there has been a trial in an inconvenient forum, the inconvenience as such can never be remedied." *Jenkins*, 535 A.2d at 1371 (Ferren, J., concurring).

As the Supreme Court noted in *Van Cauwenberghe*, these concerns are mitigated to a degree by the potential availability of a statutory procedure for discretionary interlocutory review. 486 U.S. at 530, 108 S.Ct. 1945 (stating that the certification procedure in 28 U.S.C. § 1292(b) "provides an avenue for review of *forum non conveniens* determinations in appropriate cases"). This jurisdiction has such a procedure in D.C.Code § 11–721(d), which is the local counterpart of 28 U.S.C. § 1292(b). Under § 11–721(d), a Superior Court judge may certify in writing that an otherwise non-appealable ruling or order "involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the ultimate termination of the litigation or case." This court may then, in the exercise of its discretion, permit an appeal to be taken from the ruling or order. *Id.*

As we have been careful to emphasize in other contexts, the certification procedure of § 11–721(d) "is intended to be exceptional and not merely a means of accelerated review for what may appear to be a difficult issue." *Medlantic Health Care Group, Inc. v. Cunningham*, 755 A.2d 1032, 1034 (D.C.2000); *see also In re J.A.P.*, 749 A.2d 715, 717–18 (D.C. 2000) (dismissing an appeal because permission under § 11–721(d) is improvident-

ly granted where resolution of the certified issue "cannot seriously be expected to 'advance the ultimate termination of the litigation' "). *Forum non conveniens* issues should not be certified routinely; that would be an abuse of the statutory procedure and would disserve the administration of justice by delaying litigation, increasing its costs and adding to the burdens of the court and the parties. But federal appellate courts occasionally have deemed it beneficial in complex cases to employ the analogous certification procedure of 28 U.S.C. § 1292(b) to resolve *forum non conveniens* disputes at an early stage, *see, e.g., Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 230 U.S.App. D.C. 325, 326, 717 F.2d 602, 603 (1983), and have encouraged district courts to consider certifying *forum non conveniens* issues that meet the statutory criteria, *see, e.g., Gonzalez,* 832 F.2d at 881 & n. 5; *In re Air Crash Disaster,* 821 F.2d at 1167 n. 34. "[P]retrial certification of this issue not only obviates a possibly useless trial, but affords an effective review by this court." *Gonzalez,* 832 F.2d at 881 n. 5. We think that the procedure might be particularly (though not exclusively) well-suited where a close

*forum non conveniens* question turns on the proper evaluation of the public interest factors. And use of that procedure, where appropriate, concomitantly will ensure the continued role of this court in developing the published law of *forum non conveniens* as applied to novel situations.

## III.

We hold that trial court orders denying motions to dismiss on grounds of *forum non conveniens* do not fall within the collateral order doctrine and are not immediately appealable to this court as of right. As the certification procedure of D.C.Code § 11–721(d) was not invoked in this case, our holding requires us to dismiss the present appeal for lack of jurisdiction without reaching the merits.[10]

*So ordered.*

---

**10.** Because our decision that we lack jurisdiction over this appeal overturns prior decisions to the contrary, Rolinski asks that we make our holding prospective only. We cannot do that. *See Davis v. Moore,* 772 A.2d 204, 209 (D.C.2001) (en banc) (adopting "a firm rule of retroactivity for our rulings").