**In re Alma BROWN, et al., Appellants.**

Nos. 06–FM–1207, 06–FM–1209, 06–FM–1210, 06–FM–1213 to 06–FM–1216, 06–FM–1219 to 06–FM–1225, 06–FM–1234, 06–FM–1235.

District of Columbia Court of Appeals.

Argued Feb. 24, 2009.
Decided July 2, 2009.

---

Christine A. Monta, Public Defender Service, with whom James Klein, David Norman, and Joshua Deahl, Public Defender Service, were on the brief, for appellants.

Mary T. Connelly, Assistant Attorney General, with whom Peter J. Nickles, Interim Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for the District of Columbia.

Before REID and FISHER, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

Appellants are sixteen individuals committed to the custody of the District of Columbia Department of Mental Health for an indefinite period of time, pursuant to D.C.Code § 21–545. They challenge the trial court's denial of their consolidated motion to dismiss pending civil recommitment petitions filed against them by the District of Columbia. We do not reach the merits of the appeals because we lack subject matter jurisdiction. Therefore, we dismiss the instant appeals without prejudice to possible future challenges after final judgments are entered in the trial court.

## I.

The District of Columbia Hospitalization of the Mentally Ill Act, D.C.Code §§ 21–501–592 (1973) (amended 2004) ("Ervin Act"), provided for the indefinite commitment of any person found to be "mentally ill and, because of that mental illness, is likely to injure himself or others if not committed." D.C.Code § 21–545. All of the appellants were thus committed between 1976 and 2001, and remained committed when the actions in the trial court were commenced. In December of 2002, the Council of the District of Columbia ("Council") adopted the Mental Health Commitment Act of 2002, which made significant changes to the Ervin Act. D.C. Law 14–283, amending D.C.Code §§ 21–501–592 (2007 Supp.). Most relevant to the case at bar, the Act changed the dura-

tion of civil commitments from an indefinite period of time to a period of one year. D.C.Code § 21–545(b)(2) (2007 Supp.). Section 2(gg), later codified at D.C.Code § 21–589.01, *amended by* D.C. Law 16–235, provided that all indeterminate commitments would "terminate no more than 18 months from January 1, 2003," unless recommitment petitions [1] were filed before that date.

While most provisions of the Act took effect on April 4, 2003, the portions of the Act that limited future commitments to a period of one year and established specific procedures for recommitment required affirmative congressional approval. When it became clear that Congress would not approve these provisions within 18 months after January 1, 2003 [by July 1, 2004], the Council enacted four sequential emergency and temporary amendments to Section 2(gg) in 2004. Each provided that all indefinite commitments would expire 548 days [18 months] from the date of congressional approval of the statutes in question.

Congress approved the provisions on December 10, 2004. On July 20, 2005, the last of the Council's 2004 temporary amendments expired, and the original version of Section 2(gg) became the controlling law.[2] Thus, the statutory authorization for continuing the indefinite commitments lapsed on July 20, 2005.

Apparently believing the indeterminate commitments would expire in June of 2006, eighteen months after congressional approval, the Department of Mental Health filed petitions for appellants' recommitment with the Mental Health Commission

("Commission") between October 2005 and April 2006. In May of 2006, one appellant filed the first motion to dismiss the recommitment petition "on jurisdictional grounds." The other appellants soon filed substantially verbatim motions, each arguing that the lapse of statutory authority caused his or her indefinite commitment to terminate without review on July 20, 2005. According to appellants, the government's failure to file recommitment petitions prior to that date stripped the Commission of jurisdiction to decide the petitions, necessitating dismissal of the motions to recommit.

In response to the motions filed by appellants, the Council passed a series of emergency, temporary, and permanent amendments ("2006 amendments"), all of which provided that the commitments of indefinitely committed persons expired "548 days after December 10, 2004 [the date of congressional approval], unless the Department of Mental Health has petitioned for recommitment." The amendments also state that the section "shall apply as of July 20, 2005."

Following the enactment of the first of the 2006 amendments, the District filed its response to appellants' consolidated motion to dismiss the recommitment petitions, relying on the 2006 amendments as the basis for the Commission's jurisdiction over these cases. The Commission agreed with the government's argument and denied the appellants' motions. Appellants then filed a motion for review of the Commission's order in Superior Court, continuing to seek dismissal of the petitions.

---

1. With a petition for recommitment, the determination of whether that individual remains mentally ill and poses a risk to herself or others as a result of the mental illness is made by the Mental Health Commission. *See* D.C.Code § 21–545.01. In contrast, when civil commitment proceedings are instituted against an individual for the first time, the individual is entitled to a jury trial. If no jury is requested, the court makes the determination. *See* D.C.Code § 21–545.

2. Under the original version of Section 2(gg), the indefinite commitments could not extend past July 1, 2004.

Judge Linda Davis rejected appellants' arguments and denied the motions to dismiss. These appeals followed.

Before us, appellants challenge the 2006 amendments as exceeding the Council's authority under the Home Rule Act, D.C.Code § 1–201.01 *et. seq.* (2001), as in violation of due process, and as bills of attainder. We do not reach the merits of these arguments, because we lack subject matter jurisdiction over these appeals.

## II.

 Subject to certain exceptions that are not applicable here, we have jurisdiction to review only "final orders and judgments" of the Superior Court, D.C.Code § 11–721(a)(1) (2001), and "the lack of finality is a bar to appellate jurisdiction." *Rolinski v. Lewis,* 828 A.2d 739, 745 (D.C. 2003). "A party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Id.*

Before briefs were filed, appellee moved to dismiss the appeals on the grounds that this court lacks jurisdiction to entertain them. Appellants responded that this court had jurisdiction to entertain an appeal of the order denying the motion to dismiss because the order "has a final and irreparable effect on the important rights of the parties" (citations omitted). The motions panel denied the motion to dismiss the appeal without prejudice to it being renewed before the panel designated to hear the case on the merits. In its brief before us, appellants contend the order at issue should be construed as the functional equivalent of a denial of a writ of habeas corpus, and thus a final, appealable order.

 While we agree that the denial of a petition for a writ of habeas corpus is a final order and thus appealable, *see Jen-*

*kins v. United States,* 548 A.2d 102, 107 (D.C.1988), we are satisfied that the motions to dismiss in the trial court cannot reasonably be interpreted as petitions for such a writ. At no point did appellants request their release, the relief for which the writ is intended. *See Bennett v. Ridley,* 633 A.2d 824, 826 (D.C.1993) (noting the "grand purpose" of a writ of habeas corpus is "protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty").[3] Further, appellants did not raise the theory that their motions should be treated as petitions for habeas corpus before the trial court for its considered review, so we are unable to consider this claim on appeal. *See Dorm v. United States,* 559 A.2d 1317, 1318 (D.C.1989) (holding that a defendant "must present to the trial court all the issues to be raised or else forego their consideration later by this court"). Therefore, because appellants have not requested relief in the nature of that provided by the issuance of the writ and failed to raise this argument in the trial court, we decline to interpret their motions to dismiss as petitions for writs of habeas corpus in these appeals.

 Furthermore, the denial of appellants' motions to dismiss does not meet the definition of a final order. An order is final for the purposes of appeal only when it disposes of all issues and claims on the merits as to all parties in the case. *Rolinski,* 828 A.2d at 745. A denial of a motion to dismiss is ordinarily not a final, appealable order, because it does not terminate the action on the merits. *Id.* at 745–46. The issue of whether appellants are a danger to themselves or others due to their purported mental illnesses was never reached by the trial court, so the cases

---

**3.** Some of the patients, while "committed," were in fact outpatients when the motions to dismiss were filed.

were not decided on the merits. Accordingly, we are satisfied that the orders at issue are not final orders within the meaning of § 11–721(a)(1).

■ Even though the orders at issue are not "final," we nonetheless may have jurisdiction to hear the appeals if the order falls within the collateral order exception recognized by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and followed by this court. *Rolinski*, 828 A.2d at 746–48 (applying *Cohen* test). An order satisfies this narrow exception to the finality requirement if three conditions are met. Specifically, the order must (1) conclusively determine a disputed question of law, (2) resolve an important issue that is separate from the merits of the case, and (3) be effectively unreviewable on appeal from a final judgment. *Finkelstein v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 339–40 (D.C.2001).

■ Courts following *Cohen*, including us, have recognized only a limited number of circumstances within the collateral order exception. For example, an order denying bail in a criminal case is appealable under the exception because it is effectively unreviewable on appeal from a final judgment because, by that point, the bail order is moot.[4] *See Wise v. Murphy*, 275 A.2d 205, 211 (D.C.1971) (citing *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951)). An order denying a motion to dismiss predicated on a constitutional right to be free from trial is also a well-recognized exception. In particular, a denial of a motion to dismiss under the speech or debate clause or on double jeopardy grounds satisfies the collateral order exception. *Helstoski v. Meanor*, 442 U.S. 500, 507, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (direct appeal available for denial of

motion to dismiss based on claim that indictment violated speech or debate clause); *Young v. United States*, 745 A.2d 943, 945 (D.C.2000) (denial of motion to dismiss indictment on double jeopardy grounds proper subject of immediate appeal). In addition, a denial of a motion to dismiss where the motion is predicated upon a claim of immunity from suit is also immediately reviewable. *Stein v. United States*, 532 A.2d 641, 644 (D.C.1987) (entertaining immediate appeal of denial of motion to dismiss based on claim of immunity). In these cases, a party's right to be free from trial is at issue. Because the right would be a nullity if the proceedings continued after the denial of the motion to dismiss, requiring that the appeal be taken from a final judgment would provide an inadequate remedy. *See United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269–70, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982).

■ Most other types of pre-trial orders, however, do not satisfy the requirements of the collateral order exception, because the rights implicated can be vindicated at trial or on appeal from a final judgment. These include denials of motions to dismiss indictments on grounds *other than* double jeopardy, the speech or debate clause, or some other recognized immunity. *See, e.g., Hollywood Motor Car Co.*, 458 U.S. at 264, 102 S.Ct. 3081 (denial of motion to dismiss for prosecutorial vindictiveness not immediately appealable); *United States v. MacDonald*, 435 U.S. 850, 861, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (denial of motion to dismiss on speedy trial grounds not immediately appealable); *Johnson v. District of Columbia*, 853 A.2d 207, 213 (D.C.2004) (dismissing interlocutory appeal from denial of motion to dismiss indictment where double jeopardy ex-

---

4. We also note that defendants in the District of Columbia are entitled to appellate review of pretrial detention or conditions placed on their pretrial release under D.C.Code §§ 23–1322 and –1324.

ception did not apply); *Jones v. United States,* 669 A.2d 724, 728 (D.C.1995) (denial of motion to dismiss indictment for vagueness on constitutional grounds not immediately appealable).

The denial of the consolidated motion to dismiss the recommitment petitions does not fall within the collateral order exception because the third prong of the *Cohen* test is not satisfied. The validity of the recommitment petitions and procedures laid out in the Council's laws would be fully reviewable on an appeal from an adverse final judgment. Appellants maintain, however, that even if they ultimately prevail, they cannot recover for any loss of liberty they have experienced due to the trial court's order, and thus their rights will be destroyed if not vindicated in the instant appeal. They argue their situation is like that of a criminal defendant denied bail or someone committed for a competency evaluation,[5] both of whom may appeal such a ruling. In both of the situations to which appellants refer, the order in question results in an immediate loss of liberty that is not subject to review on appeal from a trial judgment. Appellants' situation is distinguishable, however, because the trial court's denial of appellants' motions to dismiss does not result in any loss of liberty beyond that authorized by the initial commitment orders. Because the trial court has not yet ruled upon the recommitment petitions, there is no order that irreparably impacts appellants' rights.

We think that the circumstances here are indistinguishable from an appeal from a denial of a motion to dismiss an indictment when the defendant is being held in lieu of bail. While the legality of such a confinement in a criminal case may be challenged in an interlocutory appeal, the denial of the motion to dismiss cannot be reviewed until later. When the motion to dismiss is denied, the case moves forward and any asserted claims and rights can be vindicated at trial or on final appeal. In appellants' cases, the ultimate issue of the validity of the 2006 Amendments would be reviewable on appeal from a final judgment, as is the question of whether appellants were erroneously the subject of summary commitment procedures, rather than initial commitment procedures. While appellants may be burdened by the current proceedings, they do not have the right to be free from the proceedings. Thus, immediate review is not necessary to vindicate appellants' rights. *See Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 870, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (citations omitted). Because none of appellants' rights will be irretrievably lost in the absence of an immediate appeal, the third prong of *Cohen* is not satisfied.

### III.

The order denying appellants' motions to dismiss the recommitment petitions is a non-final order that does not fall within the collateral order exception. Therefore, this court lacks subject matter jurisdiction and we dismiss the instant appeals without prejudice to any future appeals from a final judgment.

---

**5.** *See Farrell v. United States,* 646 A.2d 963 (D.C.1994) (commitment for 60–day evaluation related to competency to stand trial meets the *Cohen* standard).